EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rafael A. Deliz Muñoz, et als.<br><br>Recurridos<br><br>v.<br><br>Diana Igartúa Muñoz, et als.<br><br>Peticionarios | Certiorari<br><br>2003 TSPR 4<br><br>158 DPR _____ |

Número del Caso: CC-2001-489

Fecha: 23 de enero de 2003

Tribunal de Circuito de Apelaciones:
                    Circuito Regional III

Juez Ponente:
                    Hon. Carlos Soler Aquino

Abogado de la Parte Peticionaria:
                    Lcdo. Manlio Arraiza Donate
                    Lcdo. Juan C. Salichs Pou

Abogado de la Parte Recurrida:
                    Lcdo. Lorenzo G. Llerandi Beauchamp

Materia: Acción Civil (Cartas Testamentarias Albaceazgo)

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Rafael A. Deliz Muñoz, et als.

    Recurridos

        vs.                           CC-2001-489   CERTIORARI

Diana Igartúa Muñoz, et als.

    Peticionarios

Opinión del Tribunal emitida por el Juez Asociado SEÑOR REBOLLO LÓPEZ

> San Juan, Puerto Rico, a 23 enero de 2003

> *"Si la ley relativa al otorgamiento de testamentos notariales es una que ha sido pensada y ordenada sobre la base de un notariado competente, difícilmente podrá la misma rendir las consecuencias deseadas si falla el presupuesto básico que concibe una práctica notarial de efectividad probada."*[1]

El 13 de abril de 1993, la Sra. Gertrudis Muñoz Mestre otorgó testamento abierto ante el notario Juan José Nolla Amado en el cual instituyó herederos del tercio de legítima estricta a sus hijos Héctor Arturo, Rafael Ángel y Norma Mercedes –de apellidos Deliz Muñoz– y a Diana, Armengol, Iván G. e Ivette –de

---

[1] José Ramón Vélez Torres, <u>Curso de Derecho Civil,</u>    San    Juan,    Ed.    Universidad

apellidos Igartúa Muñoz. En cuanto a los tercios de mejora y libre disposición, la testadora designó como único y

universal heredero a su nieto, el Sr. Noel A. Santana Igartúa; este último fue nombrado, además, albacea testamentario.

La Sra. Muñoz Mestre falleció el 14 de junio de 1997. Tres meses más tarde, el 25 de septiembre de 1997, sus hijos Rafael A. Deliz Muñoz, Héctor A. Deliz Muñoz, Norma M. Deliz Muñoz, Iván G. Igartúa Muñoz y Armengol Igartúa Muñoz, aquí recurridos, iniciaron el presente pleito impugnando el testamento otorgado por su progenitora. Alegaron, en síntesis, que el testamento no reflejaba la última voluntad de la testadora y solicitaron que se privara a la parte demandada de su derecho a la herencia en controversia.

Luego de varios incidentes procesales, el día 16 de diciembre de 1999 la parte demandante, radicó una moción de sentencia sumaria. Alegó dicha parte, en síntesis, que el testamento era nulo *ab initio* y que nunca advino a ser la última voluntad de la testadora al no cumplir con las disposiciones del Código Civil, específicamente las relacionadas con la identificación y conocimiento del testador y de los testigos. Adujeron, que el Notario no dio fe de conocer personalmente a la testadora, no utilizó testigos de conocimiento para identificarla y que tampoco conocía a los testigos instrumentales. Por último, alegaron que no se habían reseñado los documentos utilizados para identificar a la testadora.[2]

---

[2] Otros argumentos presentados ante el foro de instancia por los demandantes-recurridos fueron: que la Ley Notarial de Puerto Rico, Ley Núm 75 de 2 de julio de 1987, 4 L.P.R.A. sec. 2001 *et seq.*, no aplica a los testamentos y que, por consiguiente, el notario está vedado de utilizar los medios

Así las cosas, el 15 de mayo de 2000, el Sr. Santana Igartúa se opuso a la moción de sentencia sumaria alegando que no procedía declarar la misma con lugar por existir una controversia real de hechos que hacía indispensable la celebración de una vista evidenciaria.[3]  Específicamente, alegó, refiriéndose a la identificación de los comparecientes, que los anejos presentados en su moción demostraban que "lo que la ley persigue se cumplió, aunque no se señaló, en forma clara y expresamente ..." y que dicha omisión podía ser subsanada mediante acta notarial o de subsanación. (Énfasis suplido.) Esto último refiriéndose a que el notario conocía personalmente a la Sra. Muñoz Mestre y que identificó a los testigos instrumentales a través del testimonio de la testadora.

En cuanto a la dación de fe de conocimiento del testador por parte del notario, sostuvo el peticionario que ésta es una

---

supletorios dispuestos en ésta para identificar a los comparecientes y que la falta de fe de conocimiento de los testigos por parte del notario abonaba a la invalidez del documento, ya que el Artículo 635, 31 L.P.R.A. sec. 2151, aplica sólo a la testadora y no a los testigos.

[3] Debemos señalar que a pesar de que Santana Igartúa alegó en su oposición a la moción de sentencia sumaria que existía una controversia real de hechos, éste no expuso cuáles eran dichos hechos. Interpretando las alegaciones de su moción de la manera más favorable a su contención, nos parece que a lo que el peticionario se refiere es a si el notario conocía o no a la testadora. Esta es la única conclusión a la que podemos llegar si consideramos que los anejos incluidos por el peticionario en su escrito eran dos escrituras públicas, ambas de fechas anteriores al testamento, otorgadas por la Sra. Gertrudis Muñoz Mestre ante el notario Nolla Amado, donde éste daba fe de conocer a la testadora, y una declaración jurada suscrita por éste donde hace constar que el método utilizado para

formalidad de forma, y no de fondo; y que su omisión puede ser subsanada mediante la presentación de prueba extrínseca. Refiriéndose al método supletorio de identificación contenido en el Artículo 17 (c) de la Ley Notarial, 4 L.P.R.A. sec. 2035, sostuvo que tratándose de un mero requisito de forma, el no especificar en el testamento el medio utilizado para identificar a los comparecientes no hace el instrumento uno nulo *ab initio*.[4]

Finalizó el peticionario su escrito de oposición compartiendo con el tribunal y los demandantes su preocupación en cuanto a la necesidad de que el notario autorizante fuera considerado parte indispensable en este pleito, por estar sujeto a responder en daños y perjuicios si el testamento fuera declarado nulo.

El tribunal de instancia emitió una sentencia sumaria parcial en la cual acogió los planteamientos de la parte demandante, específicamente los relacionados con la identificación de los comparecientes. Concluyó que, a tenor con lo dispuesto en el Artículo 649 del Código Civil, 31 L.P.R.A. sec. 2186, el notario tiene que dar fe de conocer al testador o a los testigos de conocimiento en su caso. Esta

---

identificar a la testadora fue su propio y personal conocimiento.

[4] Este artículo dispone que en defecto del conocimiento personal del notario la identificación de los otorgantes podrá llevarse a cabo "por documento de identidad con retrato y firma, expedido por las autoridades públicas competentes del Estado Libre Asociado de Puerto Rico, de los Estados Unidos, o de uno de los estados de la Unión, cuyo objeto sea identificar a las personas o por pasaporte debidamente expedido por autoridad extranjera."

dación de fe, sostuvo el foro primario, tiene que estar expresamente consignada en la escritura de testamento. Entendió que en el supuesto de que esto resulte imposible, por no conocer el notario al testador ni haber testigos de conocimiento, entonces el notario podrá utilizar los medios supletorios de identidad provistos a esos efectos en el Artículo 17 de la Ley Notarial, ante, pero que es "deber ineludible" del notario hacer constar expresamente en la escritura cuál fue el método de identidad utilizado.

Inconforme, el codemandado Noel Santana Igartúa acudió ante el Tribunal de Circuito de Apelaciones mediante recurso de apelación. Alegó, en síntesis, que incidió el foro primario al concluir que la omisión del notario de dar fe del conocimiento personal de la testadora y de los testigos o, en su defecto, de no especificar los medios específicos que utilizó para asegurarse de sus identidades, constituye un error fatal que no puede ser subsanado mediante la presentación de evidencia extrínseca. Además, sostuvo que existía una controversia real y genuina que impedía dictar sentencia sumaria; que debía celebrarse una vista evidenciaria para determinar cuál fue el método de identificación utilizado por el notario; y que no procedía resolver la controversia sobre nulidad testamentaria sin determinar que el notario autorizante era parte indispensable.

Mediante sentencia a esos efectos, el Tribunal de Circuito de Apelaciones confirmó el dictamen recurrido. Entendió que la controversia planteada era una de estricto

derecho; a saber: si el notario que otorgó el testamento identificó al testador conforme a derecho y si tal omisión ocasionaba la nulidad del testamento. En mérito de lo anterior, concluyó que adolece de nulidad absoluta el testamento en que no se consigne expresamente la fe del notario de que conoce a los otorgantes, personalmente o a través de los mecanismos que provee la ley. Entendió que cuando no pueda identificarse al testador a través de los medios dispuestos en el Artículo 634 del Código Civil, 31 L.P.R.A. sec. 2150, esta circunstancia debe ser declarada por el notario reseñando los documentos que el testador presente con dicho objeto y las señas personales del mismo. Además, citando el Artículo 15 (e) de la Ley Notarial, ante, y la Regla 29 del Reglamento Notarial, sostuvo que el notario tiene que hacer constar en la escritura de testamento cuál fue el método supletorio específico que utilizó.

Insatisfecho con esta determinación, el Sr. Santana Igartúa recurrió, oportunamente, ante este Tribunal --vía *certiorari*-- imputándole al Tribunal de Circuito de Apelaciones haber errado:

> ... al concluir que la omisión del Notario de dar fe del conocimiento personal de la testadora, o en su defecto, de no especificar los medios específicos que usó para asegurar la identidad de ella y/o de los testigos constituye una omisión de la ley que conlleva la nulidad del testamento.

> ... al no considerar ni resolver los errores identificados en la apelación como primero, segundo y cuarto.

Atendida la petición de *certiorari*, le concedimos veinte (20) días a la parte demandante-recurrida para mostrar causa por la cual este Tribunal no debía expedir el auto solicitado y dictar Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones. La Asociación de Notarios de Puerto Rico presentó moción solicitando comparecer como *amicus curiae*, petición que concedimos.

Habiendo comparecido ambas partes, y estando en condiciones de resolver el recurso, procedemos a así hacerlo.

**I**

El Artículo 636 de nuestro Código Civil dispone que "[s]erá nulo el testamento en cuyo otorgamiento no se hayan observado las formalidades respectivamente establecidas [en éste]." 31 L.P.R.A. sec. 2152. Desde el año 1931 este Tribunal resolvió que, en materia de testamentos, la forma es algo solemne. Al respecto señalamos en *Ex parte Planis v. Pueblo*, 42 D.P.R. 689, 691 (1931) que:

> La forma de testamentos es algo solemne creado por el estatuto. Si no se sigue la forma delineada por el estatuto no existe testamento. Según apuntó hace mucho tiempo el Sr. Thayer, las formalidades de un testamento no son meras cuestiones de evidencia sino requisitos substantivos. Si no se llenan estos requisitos, no hay testamento.[5] (Énfasis suplido.)

---

[5] Esta norma ha sido consistentemente reiterada en los casos Paz v. Fernández, 76 D.P.R. 742, 751-52 (1954); Rivera Pitre v. Galarza Martínez, 108 D.P.R. 565, 568 (1979); *In re* Méndez Rivera, 141 D.P.R. 753, 757 (1996) y, más recientemente, en *In re* Iván A. Ramos Vélez, res. el 1 de junio de 2000, 2000 T.S.P.R. 82.

Cónsono con lo anterior, en <u>Pacheco</u> v. <u>Sucn. Pacheco</u>, 66 D.P.R. 796, 799 (1947), citando a Manresa en sus Comentarios al Artículo 687 del Código Civil español,[6] idéntico al 636 del nuestro, expresamos:

> En efecto; la validez del testamento, como la de todos los actos jurídicos, <u>depende de la observancia de la ley que lo regule</u>, y habiéndose establecido en el presente capítulo los requisitos que deben observarse en cada una de las diversas formas admitidas para la ordenación de las últimas voluntades, es de todo punto evidente que <u>la falta de cumplimiento de sus respectivas prescripciones ha de producir necesariamente, por ministerio de la ley, la nulidad del acto ejecutado</u> con infracción de las disposiciones legales que la regulen. (Énfasis suplido.)

Así pues, la observancia de la forma exigida por ley es tan esencial para la validez del testamento que "su defecto acarrea su inexistencia, <u>por muy convincentes</u> y firmes que sean las pruebas, conseguidas por otros medios, de la voluntad del testador ...". M. Armero Delgado, <u>Testamentos y Particiones</u>, Madrid, Ed. Reus, 1951, T.I, Pág. 90. Ello considerando que, en materia de testamentos, la exigencia de la forma responde a la propia naturaleza del acto, sin que pueda entenderse que se trata de meros mecanismos para facilitar la prueba. *Id.*

La función principal de la solemnidad testamentaria es hacer imperecedera la voluntad del causante y asegurarse de que es la de él, ya que una vez muere es imposible realizar una investigación sobre la misma. José Ignacio Cano Martínez de Velazco, *Solemnidades y formalidades de los testamentos,*

---

[6] José Manresa y Navarro, <u>Comentarios al Código Civil Español</u>, 5ta ed., Madrid, Ed. Reus, 1972, T. V, págs. 471-472. (Énfasis

*según doctrina del Tribunal Supremo*, Revista de Derecho Notarial Núms. 101-102 (1978). Siendo tan esenciales los requisitos y solemnidades exigidos por la ley para la eficacia de las últimas voluntades, la falta de cualquiera de ellas es por sí solo suficiente para privar de eficacia el acto testamentario. Q.M. Scaevola, Código Civil Comentado y Concordado, 2da ed., Madrid, Ed. Reus, 1950, T. XII, pág. 363. Al respecto nos señala el tratadista Ossorio Morales que no basta con que la voluntad del testador sea conocida en forma indubitada, ya que "esa voluntad será ineficaz si al manifestarla no se han observado rigurosamente las solemnidades que para cada clase de testamento establece la ley." Juan Ossorio Morales, Manual de Sucesión Testada, Madrid, Ed. Inst. Estudios Políticos, 1957, Pág. 466.

El Tribunal Supremo de España ha denominado como errónea y muy peligrosa la teoría de que lo único esencial en un acto testamentario es que conste la voluntad del testador cuando en la escritura ésta aparece convenientemente expresada y ratificada. Sentencia del Tribunal Supremo de España de 18 de noviembre de 1915; *véase además,* José Santamaría, Comentarios al Código Civil, Madrid, Ed. Rev. Der. Privado, 1958, T. I, Pág. 704-705. Lo antes expuesto significa que la expresión de la voluntad testamentaria está necesariamente supeditada al cumplimiento de los requisitos de forma impuestos por la ley. José Ramón Vélez Torres, Curso de Derecho Civil, San Juan, Ed.

suplido.)

Universidad Interamericana de Puerto Rico, 1992, T. IV, Pág. 125.

Como es sabido, la solemnidad testamentaria a la que hemos hecho referencia no se refiere a insignificantes requisitos de forma, sino a aquellos que sean esenciales e imprescindibles para garantizar su autenticidad y la veracidad de la declaración de voluntad del testador. A esos efectos, hemos señalado que no todas las omisiones en que pueda incurrir un notario necesariamente vician de nulidad el testamento. Morales v. Registrador, 35 D.P.R. 905, 907-08 (1926); Paz v. Fernández, 76 D.P.R. 742, 752-53; Pacheco v. Sucn. Pacheco, ante, a las págs. 801-02. Por el contrario, hemos distinguido entre aquellas omisiones que pueden ser subsanadas y las que, por no serlo, provocan la nulidad absoluta del acto testamentario.

De este modo, hemos categorizado las formalidades testamentarias en dos grupos; a saber: las de fondo y las de forma. Paz v. Fernández, ante, en la pág. 752. Las formalidades de fondo son aquellas que la ley exige que aparezcan expresamente consignadas en la escritura de testamento. De este modo, su cumplimiento deberá surgir expresamente de la faz del documento, sin que pueda subsanarse la omisión de este requisito mediante la presentación de prueba extrínseca o por la dación de fe general de que se han cumplido todas las formalidades exigidas por la ley. En este caso, y tratándose de requisitos esenciales, su inobservancia produce *ab initio* la nulidad del testamento. *Id.*

Por el contrario, el cumplimiento de las formalidades externas o de forma no tiene que surgir expresamente de la faz del testamento, aunque deberán ser igualmente observadas, so pena de nulidad. En este caso es suficiente con la dación de fe general de que se han cumplido todas las formalidades requeridas por la ley. Enid Martínez Moya, *El Derecho sucesorio puertorriqueño*, 67 Rev. Jur. U.P.R. 1, 63 (1998). Acorde con ello, en Paz v. Fernández, ante, a la pág. 752, citando al tratadista Clemente De Diego, señalamos que corresponde a los tribunales la apreciación en torno a si se han observado o no las formalidades de forma y sus consecuencias, "ya que, 'en principio, no deben ser más ni menos que las precisas para hacer auténtica, segura y permanente la última voluntad'."

Como regla general, para identificar si estamos ante una formalidad de forma o de fondo es necesario evaluar si nuestro ordenamiento exige o no que se consigne expresamente en el testamento el cumplimiento de la formalidad en cuestión. Así, hemos hecho claro que "si lo omitido por el notario es algo que la ley no exige que se consigne expresamente en el testamento, bastará que el notario dé fe de haberse observado 'todas las prescripciones exigidas por el Código Civil vigente respecto a los testamentos abiertos'." Pacheco v. Sucn. Pacheco, ante, a la pág. 801. Por el contrario, "cuando el Código ordena que se haga constar expresamente algún requisito en el testamento mismo, la omisión de ese requisito es fatal para la validez del acto y no puede ser subsanada por la

certificación de haberse observado todas las prescripciones legales." Véase: Pacheco v. Sucn. Pacheco, ante, a la pág. 802.

## II

Nuestro Código Civil consigna como una solemnidad fundamental del acto testamentario la identificación de la persona del testador. Federico Puig Peña, Tratado de Derecho Civil Español, Madrid, Ed. Revista de Derecho Privado, 1974, T. V, Vol. I, págs. 165-66. Es indiscutible la necesidad de que el testador sea identificado para que el testamento resulte verdaderamente probatorio y se prevengan engaños y usurpaciones del estado civil. José Castán Tobeñas, Derecho Civil Español, Común y Foral, 8va ed., Madrid, Ed. Reus, 1979, T. VI, pág. 62. Sobre este particular expresa Manresa que "[e]s de tal necesidad que [el notario] conozca al testador o que se asegure de su conocimiento por modo eficaz, que del cumplimiento de este requisito puede decirse que depende la autenticidad del documento[.]" José Manresa y Navarro, Comentarios al Código Civil Español, Madrid, Ed. Reus, 1972, T. V, pág. 658. Para este autor en la escritura de testamento debe hacerse constar "de una manera evidente que la persona que testaba era la misma a quien verdaderamente correspondía el nombre y apellido con que se presentara a testar[.]" Id.

Acorde con lo anterior se han establecido tres sistemas de identificación diferentes; a saber: identificación por conocimiento del notario y de los testigos;[7] identificación

---

[7] Artículo 634 del Código Civil, 31 L.P.R.A. sec. 2150. Este artículo dispone, en lo pertinente, que: "El notario y dos de

por testigos de conocimiento;[8] e identificación por reseña de documentos y señas personales. [9] Valga resaltar, según expresado por el tratadista español Puig Peña, que estos tres métodos de identificación han sido prescritos por el Código Civil como *numerus clausus,* los cuales están "presididos por el principio de subsidiariedad, de tal forma que sólo se puede utilizar uno de ellos en defecto de los anteriores." Federico Puig Peña, ante, a la pág. 167; citando la Sentencia del Tribunal Supremo de España de 27 de mayo de 1914.

Así, vemos que el primero de estos métodos de identificación, denominado conocimiento directo por muchos comentaristas, consiste en el conocimiento personal que del testador tengan el notario y dos de los testigos que autoricen el testamento; [10] mientras que el segundo consiste en identificar la persona del testador con dos testigos que le conozcan y que, a su vez, sean conocidos del notario y de los testigos instrumentales.

---

los testigos que autoricen el testamento deberán conocer al testador, y si no lo conocieren, se identificará su persona con dos testigos que le conozcan y sean conocidos del mismo notario y de los testigos instrumentales."

[8] *Id.*

[9] Artículo 635 del Código Civil, 31 L.P.R.A. sec. 2151. Este artículo dispone, en lo pertinente, que: "Si no pudiere identificarse la persona del testador en la forma prevenida en la sección que precede, se declarará esta circunstancia por el notario, o por los testigos en su caso, reseñando los documentos que el testador presente con dicho objeto y las señas personales del mismo."

[10] Refiriéndonos a este método de identificación en In re Olmo Olmo, 113 D.P.R. 441, 461 (1982), señalamos que "universalmente se reconoce que el conocimiento directo y personal del notario es el más idóneo y normalmente usado."

En el supuesto de que se identifique al testador a través de uno de estos dos métodos, <u>entonces tendrá que cumplirse con lo dispuesto en el Artículo 649 del Código Civil</u>, ante. Éste ordena al notario que dé fe al final del testamento de conocer al testador o a los testigos de conocimiento, en caso de que éstos sean utilizados. Valga resaltar que este artículo también señala que "se dará fe al final del testamento de haberse cumplido todas las dichas formalidades."[11]

La doctrina está conteste en que en virtud de esta disposición estatutaria, y como regla general, no es necesario dar fe del cumplimiento de cada una de las formalidades requeridas por ley, sino que es suficiente que el notario dé fe en forma general e indeterminada de que se han cumplido todas las formalidades legales. José Castán Tobeñas, ante, a las págs. 99-100; Francisco Bonet Ramón, <u>Compendio de Derecho Civil</u>, Madrid, Ed. Revista de Derecho Privado, 1965, T. V, pág. 141; José Manresa y Navarro, <u>Comentarios al Código Civil Español</u>, Madrid, Ed. Reus, 1972, T. V, págs. 753-54; Q.M.

---

[11] Es preciso destacar que en ocasión de interpretar este artículo, en <u>Cintrón</u> v. <u>Cintrón</u>, 70 D.P.R. 770, 781 (1950), establecimos que todo notario debe consignar esa cláusula general al final del testamento para evitar "el menor motivo de impugnación", aunque se reconoció que esta disposición no exige el uso de una fórmula sacramental. Así, concluimos que si del testamento se desprende que se ha cumplido con cada una de las formalidades que prescribe la ley, el hecho de no consignar una dación de fe general no justifica la anulación del testamento. Debemos aclarar, sin embargo, que las formalidades incumplidas en el referido caso eran de las que el Código no exige que de su cumplimiento se dé fe expresa en el testamento. En cuanto a estas últimas no podrá sostenerse la validez de un testamento donde no se haya incluido una dación de fe específica, aunque del testamento claramente se desprenda su cumplimiento.

Scaevola, Código Civil Comentado y Concordado, ante, a las págs. 498-500; Juan Ossorio Morales, Manual de Sucesión Testada, ante, a las págs. 87-88; D. Calixto Valverde y Valverde, Tratado de Derecho Civil Español, 4ta ed., Valladolid, Ed. Talleres Cuesta, 1939, T. V, pág. 96; Antonio Coello Gallardo, Sucesiones, Madrid, Ed. Reus, 1952, T. I, pág. 287.

Sin embargo, también son unánimes los pronunciamientos a los efectos de que la excepción a esta norma se da cuando se trata de aquellas solemnidades en las que el Código ordena que de su cumplimiento se dé fe expresamente. Al respecto se señala que, en cuanto a estas últimas, la dación de fe tendrá que ser específica y determinada, sin que bajo ningún concepto puedan considerarse comprendidas en la fórmula general incluida al final del documento. Id.

Están conformes, además, los tratadistas en que una de las formalidades de que es preciso dar fe específicamente, so pena de nulidad, es la relativa al conocimiento del testador o de los testigos que suplan este conocimiento. Id. Esto considerando que así lo exige expresamente este artículo al finalizar con la expresión: "y de conocer al testador y a los testigos de conocimiento en su caso."

III

A

En el acápite anterior discutimos dos de los procedimientos establecidos por nuestro Código Civil para identificar al testador. Nos resta por discutir el tercero de

ellos: la identificación por reseña de documentos y señas personales. Sobre este particular se encarga el Artículo 635 de nuestro Código Civil, ante, al expresar, en lo pertinente, que:

> Si no pudiere identificarse la persona del testador en la forma prevenida en la sección que precede, se <u>declarará</u> esta circunstancia por el notario, o por los testigos en su caso, <u>reseñando</u> los documentos que el testador presente con dicho objeto y las señas personales del mismo ... (Énfasis suplido.)

Tal y como se desprende de la referida disposición, en el supuesto de que el notario o los testigos instrumentales no conozcan al testador, y no sea posible la identificación a través de dos testigos de conocimiento, entonces, *y sólo entonces*, es que se activa el mandato estatutario al efecto de recurrir a la identificación por prueba documental. Esto es, este tercer procedimiento de identificación es de carácter supletorio.

Por otra parte, el notario que recurra a este tercer medio de identificación tendrá la obligación de <u>consignar expresamente</u> en el testamento que le es imposible identificar al testador mediante el método directo o por medio de testigos de conocimiento. Con relación a esto, el Tribunal Supremo de España ha establecido que es nulo un testamento donde el notario se haya limitado a consignar que los testigos instrumentales no conocían a la testadora, sin hacer ninguna declaración en cuanto a la imposibilidad de identificarla en la forma prevenida por el Artículo 685, idéntico al 634 de

nuestro Código Civil. Sentencia del Tribunal Supremo de España de 31 de mayo de 1893. *Véase además,* Francisco Lucas Fernández, Comentarios al Código Civil y Compilaciones Forales, Madrid, Ed. Revista de Derecho Privado, 1990, T. IX, pág. 357.

Comentando esta Sentencia nos ilustra Scaevola a los efectos de que:

> La demostración de que es de todo punto indispensable que el Notario o los testigos hagan la declaración de imposibilidad de conocer al testador, según ordena el artículo 686 [idéntico al Artículo 635 del Código Civil de Puerto Rico], la tenemos en una sentencia del Tribunal Supremo, fecha 31 de mayo de 1893. Esta sentencia dijo que el artículo 686 previene que se declare tal circunstancia por el Notario que autorice el testamento, cuya formalidad es tanto más esencial cuanto que la declaración notarial exigida por dicho precepto se refiere a la causa que permite testar del modo supletorio que el mismo establece[.] Q.M. Scaevola, ante a la pág. 348; *Véase además* Mario Armero Delgado, Testamentos y Particiones: Doctrina, Legislación, Jurisprudencia y Formularios, Madrid, Ed. Reus, 1951, T. I, pág. 146; José Manresa y Navarro, ante a la pág. 667; Federico Puig Peña, ante a la pág. 171; José M. Mengual y Mengual, Elementos de Derecho Notarial, Barcelona, Ed. Bosch, 1933, T. II, pág. 202.

Una segunda obligación que surge del Artículo 635, ante, es la de reseñar en la escritura de testamento los documentos presentados por el testador para acreditar su identidad y sus señas personales; ello con el propósito de suplir la expresión solemne del conocimiento que ordena el Artículo 634, ante, y fijar la identidad apetecida por si en el futuro llegara a cuestionarse la validez del testamento. Francisco Vila Plana, Instituciones de Derecho Sucesorio, Barcelona, Ed. Colección

Nereo, 1963, T. III, pág. 195; Q.M. Scaevola, ante, a la pág. 347-48.

Estos requisitos constituyen formalidades de fondo por ser de los esenciales que el Código exige sean consignados expresamente en el testamento.

B

En su último párrafo, el Artículo 635, ante, expresa que si el testamento fuese impugnado por la defectuosa identificación del testador, corresponderá al que sostenga su validez la prueba de la identidad de éste. Francisco Vila Plana, ante, a la pág. 197. El texto de este precepto "debe entenderse en el sentido de que si se impugna el testamento porque la identidad del testador no aparezca bien determinada, según los documentos y señas personales que a aquél corresponden, quien sostenga la validez ha de justificar que el que testó era el que realmente se llamaba así en el testamento." Francisco Vila Plana, ante, a la pág. 197. (Énfasis suplido.)

Como señala unánimemente la doctrina española, la razón de ser del citado precepto es facilitar la impugnación de los actos de última voluntad con el claro propósito de impedir posibles suplantaciones. Francisco Bonet Ramón, ante, a la pág. 129; Francisco Vila Plana, ante a la pág. 197; José Manresa y Navarro, ante, a la pág. 667; José Sanahuja y Soler, Tratado de Derecho Notarial, Barcelona, Ed. Bosch, 1945, T. II, pág. 398. Dicha impugnación tendrá lugar siempre que de los

documentos y señas personales no pueda determinarse apropiadamente la identidad del testador.

Así pues, queda claro que el texto de esta disposición no constituye un sustituto a la obligación del notario de reseñar los documentos de identidad o las señas personales del testador. Esto es, no estamos ante una segunda oportunidad para que el notario pueda subsanar la omisión de un requisito exigido por la ley. Habiéndose exigido expresamente en el Código Civil que se consignen las señas personales del testador y se reseñen los documentos utilizados por el notario para identificar su persona, no cabe la posibilidad de presentar *a posteriori* prueba que demuestre la manera en que se realizó la identificación. Como señaláramos, tratándose de una formalidad de fondo ésta no puede ser subsanada mediante la presentación de prueba testifical. Paz v. Fernández, ante, a la pág. 753.


IV

Dentro del marco doctrinal previamente esbozado es que debemos evaluar, en primer lugar, si adolece de nulidad absoluta un testamento donde el notario autorizante no dio fe de conocer personalmente a la testadora. Por entender que estamos ante una formalidad de fondo, cuya omisión no puede ser subsanada mediante la presentación de prueba extrínseca, contestamos dicha interrogante en la afirmativa y, por consiguiente, confirmamos el dictamen emitido por el Tribunal

de Circuito de Apelaciones en cuanto a este particular. Veamos.

En el caso de autos el peticionario Santana Igartúa sostiene que aunque el notario autorizante no dio fe de conocer personalmente a la testadora, éste sí la conocía. Con el propósito de subsanar la omisión de este requisito, acompañó su escrito de una copia de una declaración jurada del notario Nolla Amado donde éste afirma que el método utilizado para identificar a la testadora "fue el propio y personal conocimiento de la otorgante con anterioridad a dicho otorgamiento." Además, anejó copia de dos escrituras previamente otorgadas por la testadora ante el mismo notario en las que éste daba fe de conocerla personalmente.

Expresando que estamos, alegadamente, ante una formalidad de forma o extrínseca, aduce el peticionario que la evidencia presentada tiene el efecto de subsanar la omisión de la dación de fe específica sobre el conocimiento del testador.  No le asiste la razón; veamos por qué.

Ya hemos señalado que en el Artículo 649 del Código Civil, ante, se le exige al notario autorizante de un testamento abierto que dé fe de conocer al testador o a los testigos de conocimiento en su caso. Dicho precepto debe interpretarse en conjunto con el Artículo 634 del Código Civil, ante, a los efectos de que siempre que se identifique al testador utilizando el método del conocimiento directo –el notario y dos de los testigos autorizantes conocen al testador– o el indirecto –por medio de testigos de conocimiento– el notario

tendrá que incluir en el testamento una dación de fe <u>específica</u> de su conocimiento.

En varias ocasiones este Tribunal ha tenido la oportunidad de expresarse en torno a la supremacía del principio de la fe de conocimiento que da el notario. Así, en <u>Sucn. Santos v. Registrador</u>, 108 D.P.R. 831, 837 (1979), señalamos que "el mecanismo para lograr correspondencia real y legítima entre persona y firma, es exigiendo la ley la comparecencia y conocimiento por el notario."

Cónsono con lo anterior, en <u>In re Olmo Olmo</u>, 113 D.P.R. 441, 454 (1982), interpretando el Artículo 16 de la derogada Ley Notarial de Puerto Rico, 4 L.P.R.A. ant. sec. 1016, expresamos:

> Es casi unánime la posición que adjudica a la fe del conocimiento una <u>importancia suprema e imperiosa</u> en la gestión notarial. Giménez Arnau considera que el fundamento racional de la identificación del requirente estriba en 'la finalidad del instrumento público y en su eficacia. Todo el contenido de la escritura, si no se acredita la identidad del compareciente puede resultar estéril, porque sus efectos deberían quedar subordinados a la prueba de que las personas designadas en la comparecencia eran efectivamente las que habían de concurrir al otorgamiento'. José M. Sanahuja y Soler en su Tratado de Derecho Notarial estima que 'en principio es necesario que el notario garantice la identidad de las personas que intervienen en un negocio jurídico, porque la ilación entre unas situaciones y otras exige, para dar certidumbre a las relaciones jurídicas, que se fundamente bajo la fe notarial el punto de unión o de conexión, que es precisamente la persona que ostentando un derecho lo transmite a favor de otra' ... (Énfasis suplido y citas omitidas.)

De lo anteriormente expuesto se colige que este requisito ocupa un sitial privilegiado en nuestro ordenamiento jurídico,

constituyendo un elemento esencial que ha llegado a ser considerado como una solemnidad de importancia suprema e imperiosa. Véase: In re: Olmo Olmo, ante. Siendo así, es claro que estamos ante una solemnidad de fondo que al quedar incumplida produce "ab initio" la nulidad del testamento sin que de modo alguno pueda quedar subsanada mediante la presentación de prueba extrínseca. Véase: Paz v. Fernández, ante, a la pág. 752; Pacheco v. Sucn. Pacheco, ante, a la pág. 802.

Esto es, si partimos de la premisa de que en el presente caso el notario autorizante sí conocía a la testadora y que, por lo tanto, utilizó el método del conocimiento directo para identificarla, forzoso es concluir que tenía la obligación, so pena de nulidad, de consignar en el mismo documento la dación de fe que exige el Código Civil para estos casos. No habiéndolo hecho así, no es posible que, a posteriori, se pretenda presentar evidencia para demostrar tal conocimiento.

Adviértase, además, que a tenor con el principio de subsidiariedad previamente discutido, si el notario conocía a la testadora éste tenía la obligación de consignar, preferentemente, la dación de fe de dicho conocimiento. Esto es, no podía recurrir al uso de documentos de identidad, desplazando así los medios de identificación principales, y luego, ante el reclamo de un defecto en el método de identificación utilizado, alegar que conocía personalmente a la testadora. Por otra parte, no podemos avalar la contención del peticionario a los efectos de que en ningún momento se ha

cuestionado si el notario conocía o no a la testadora. Es norma altamente reiterada por este Tribunal que, siendo el testamento un acto eminentemente solemne, sus formalidades no deben ser consideradas como meras cuestiones de evidencia, sino como requisitos sustantivos de los cuales depende su validez. Si falta una de las solemnidades que expresamente exige el Código Civil, ello es por sí solo suficiente para privar de eficacia el acto testamentario. Miguel Moreno Mocholi, ante.

El peticionario intenta fundamentar su teoría de que el requisito de dar fe del conocimiento del testador es uno sujeto a ser subsanado, en los casos de Paz v. Fernández, ante; Sucn. Pacheco v. Pacheco, ante; Berdeguez v. Registrador, 27 D.P.R. 214 (1919); y la Sentencia del Tribunal Supremo de España de 5 de octubre de 1962. No obstante, luego de una lectura desapasionada de los referidos casos, resulta obvio que en ninguno de ellos estaba ante la consideración del Tribunal el requisito de la dación de fe del conocimiento.[12] Esto es, la

---

[12] En Paz v. Fernández, ante, se alegó la nulidad de un testamento por no haberse cumplido ciertas solemnidades; a saber: no se cumplió con el requisito de unidad de acto, no se consignó en el testamento que a juicio del notario y con arreglo a manifestaciones que ante él hubieran hecho los testigos instrumentales no se hallaban éstos comprendidos en ninguna de las prohibiciones establecidas por el Código Civil, falta de dación de fe por parte del notario de hallarse el otorgante a su juicio en el goce de sus facultades mentales, no aparecía consignada la advertencia a los testigos y al testador de su derecho a leer por sí el testamento y no se consignó que el testador y los testigos expresaron su conformidad con el testamento redactado. Por su parte, en Bardeguez v. Registrador, ante, tuvimos la ocasión de analizar si era necesario que se hiciera constar en el testamento que los testigos instrumentales conocían a la testadora y en

referida jurisprudencia <u>no</u> sostiene <u>ni</u> constituye autoridad con respecto a la formalidad testamentaria aquí en controversia.[13]

V

Habiendo concluido que no puede subsanarse la omisión de la dación de fe de conocimiento mediante la presentación, *a posteriori*, de evidencia que demuestre que el notario autorizante conocía a la testadora, atendemos el reclamo del peticionario a los efectos que el método supletorio utilizado en el presente caso por el notario cumple con las formalidades exigidas por nuestro Código Civil.

Pasemos a evaluar la única expresión que en cuanto a la identidad del testador hace el notario en la escritura de testamento que nos ocupa. A esos efectos se consignó lo siguiente:

---

<u>Pacheco</u> v. <u>Sucn. Pacheco</u>, ante, la validez de un testamento donde no se consignó expresamente la hora de su otorgamiento. Finalmente, en la Sentencia emitida por el Tribunal Supremo de España el 5 de octubre de 1962 se discutió si era válido un testamento donde no se dio fe de que el notario conocía a los testigos instrumentales.

**[13] El peticionario trae ante nuestra consideración una Sentencia del Tribunal Supremo de España de 27 de junio de 1917 donde se resolvió que:**

> **[d]ar fe de que el notario conocía al testador no es un requisito esencial de forma para la validez del testamento y que debe concurrir en el acto del otorgamiento porque el propósito de esa formalidad es garantizar la identificación del testador a fin de prevenir posibles usurpaciones y 'queda ésta asegurada si el Tribunal adquiere la convicción de su existencia y así lo declara por la prueba practicada.'**

Comentando la referida Sentencia nos expresa Manresa que considera "muy dudosa esta doctrina, dado el texto terminante

De haberme <u>asegurado de la identidad de los</u> <u>comparecientes por los medios establecidos en la</u> <u>Ley Notarial vigente, Artículo 17 (c)</u> y por sus manifestaciones de sus expresadas circunstancias personales de la Testadora, como así de los testigos, de haberse practicado en un solo acto, sin interrupción de clase alguna con todas las formalidades legales previstas en el Código Civil vigente, y las demás leyes correspondientes de cuanto va contenido en este instrumento público, yo, el Notario bajo mi firma, signo, sello y rúbrica, DOY FE.

Debemos aclarar que, en materia de testamentos, el Artículo 17 (c), ante, es complementario a los preceptos contenidos en el Código Civil, sin que bajo ningún concepto pueda entenderse que el mismo sustituye lo allí dispuesto. Nótese que siempre que este Tribunal ha utilizado dicho precepto, en cuanto a actos testamentarios se refiere, ha sido con el <u>único</u> propósito de definir cuáles deben ser los documentos de identidad apropiados para identificar al testador. Es el Artículo 635, ante, el que debe ser rigurosamente observado cuando se tiene la necesidad de identificar al testador por medio de documentos de identidad y <u>no</u> el Artículo 17 (c) de la Ley Notarial. Éste, <u>repetimos</u>, sólo es de aplicación a los efectos de determinar qué documentos deberán ser utilizados para acreditar la identidad del testador.

Aclarado el alcance del Artículo 17 (c) de la Ley Notarial, pasamos a analizar si lo consignado en la cláusula transcrita cumple con los requisitos exigidos por el Código Civil en su Artículo 635, ante, para aquellos casos en que se

_____

del Artículo 699 [análogo al 649 de nuestro Código Civil]."

utilicen documentos de identidad como método supletorio. Veamos.

En la escritura de testamento que hoy ocupa nuestra atención, al referirse a la identidad de los comparecientes, el notario autorizante se limitó a expresar que se había asegurado de la identidad de los comparecientes por los medios establecidos en el Artículo 17 (c) de la Ley Notarial, ante. Ya hemos señalado que lo dispuesto en este Artículo 17 (c) de ningún modo sustituye lo dispuesto en el Artículo 635 de nuestro Código Civil, ante. Cuando no sea posible identificar al testador por medio del conocimiento directo o el indirecto se tendrá que cumplir con lo que exige el Código para estos casos; esto es: se tendrá que incluir una expresión sobre la imposibilidad de identificar la persona del testador en la forma prevenida en el Artículo 634, ante, y, entonces, se tendrán que reseñar los documentos presentados por el testador y sus señas personales.

A tenor con la doctrina previamente esbozada estos son requisitos esenciales e indispensables para la validez del testamento. Esto es, estamos ante solemnidades que al ser omitidas provocan la nulidad absoluta del testamento. Por un lado, la declaración de imposibilidad de conocer al testador o utilizar testigos de conocimiento es la causa que permite testar de modo supletorio; y, por el otro, la reseña de documentos es la única forma de fijar en el instrumento la identidad del testador desconocido, por si en el futuro la

---

Manresa, ante, a la pág. 663.

validez de esa identificación fuese cuestionada. Por otra parte, es preciso destacar que, al igual que en el caso de la dación de fe de conocimiento, nos encontramos ante formalidades expresamente exigidas por el Código Civil; esta vez en su Artículo 635, ante.

Tampoco nos persuade el planteamiento del peticionario en cuanto a que en Ramírez Lebrón v. Registrador, 131 D.P.R. 76 (1992), este Tribunal calificó este requisito como uno "mero formal o de forma extrínseco" por no haberse declarado en aquella ocasión que las escrituras en cuestión eran nulas *ab initio.* Es de notar, sin embargo, que en Ramírez Lebrón v. Registrador, ante, no teníamos ante nuestra consideración una controversia relacionada con la validez de un documento, sino un recurso gubernativo donde se cuestionó la actuación del Registrador al denegar la inscripción de dos escrituras. Los pronunciamientos allí esbozados iban dirigidos a confirmar la denegatoria del Registrador y no a establecer la nulidad o validez de los documentos en controversia.[14]

---

[14] Tal como resolviéramos en Rodríguez Morales v. Registrador, 142 D.P.R. 347, 365, 366 (1997), citando al tratadista Roca Sastre, "el recurso gubernativo participa de la naturaleza de los actos de jurisdicción voluntaria, teniendo por objeto resolver si existen o no los defectos notificados por el Registrador, con la única finalidad de que se declare inscribible dicho título o que se deniegue su inscripción." Allí dijimos que la naturaleza jurídica de este recurso es similar a la de la calificación; esto es, tiene el carácter propio de los actos de jurisdicción voluntaria. Acorde con lo anterior, concluimos que el recurrir al Tribunal Supremo mediante recurso gubernativo opera sin perjuicio del recurso apropiado que pueda incoarse para contender la validez de los documentos.

En virtud de lo antes expuesto, forzoso es concluir que el no reseñar en el testamento que nos ocupa los documentos específicos de identidad utilizados y las señas personales de la Sra. Gertrudis Muñoz Mestre, constituye un defecto de fondo que hace inexistente la escritura de testamento objeto del presente litigio. Abona a esta conclusión de inexistencia la inobservancia del requisito exigido por ley en cuanto a la declaración de imposibilidad de identificar mediante el conocimiento directo o indirecto.

En vista de que en el testamento objeto del presente litigio no se dio fe de conocer a la testadora y que tampoco se cumplieron las solemnidades exigidas para la validez del método supletorio, forzoso es concluir que no incidió el foro apelativo intermedio al confirmar la resolución del tribunal de instancia en cuanto a la nulidad del testamento que hoy nos ocupa.

## VI

Según señaláramos previamente, en el presente caso la Asociación de Notarios (en adelante la Asociación) solicitó se le permitiera intervenir como *amicus curiae*, lo cual permitimos. A tal efecto, ha presentado ante nos ciertos planteamientos que, a pesar de que no alteran la decisión que hemos tomado en cuanto al caso que hoy nos ocupa, entendemos deben ser brevemente atendidos.

En su comparecencia, la Asociación reconoce y acepta como cierto que "la Ley y el Reglamento adoptado para regir la práctica notarial exigen que se haga constar una dación de fe

específica de conocimiento personal en todos los documentos notariales, o que se haga constar específicamente el método alterno que se ha utilizado para constatar la identidad de los otorgantes de un documento." Sin embargo, llama nuestra atención hacia el hecho de que "dicho reglamento fue adoptado en 1995; dos años después del otorgamiento del testamento de que se trata." Inmediatamente, nos expresa que no sería propio ni justo aplicar al presente caso las exigencias de un reglamento que no existía al otorgarse el testamento aquí en controversia.

De entrada, debemos aclarar que los requisitos a los que se refiere la Asociación en su comparecencia son formalidades propias de los actos testamentarios, exigidas por disposiciones que fueron incorporadas a nuestro acervo jurídico desde que fuera extendido a Puerto Rico el Código Civil de España en el año 1889. Luis Muñoz Morales, *El Código Civil de Puerto Rico: Breve reseña histórica*, 1 REV. JUR. U.P.R. 75, 77 (1932). Aun analizando su contención, a la luz de lo dispuesto en el Artículo 17 (c) de la Ley Notarial, ante, forzoso es concluir que debió especificarse el documento utilizado para identificar a los comparecientes, ya que desde el año 1992, un año antes del otorgamiento del testamento aquí en controversia, este Tribunal estableció, en términos generales, que: "[t]eniendo el notario el deber de ser 'acucioso y esforzado en revelar la identidad de quienes ante él contratan o actúan' somos del criterio que resulta complementario a dicho deber que el notario, de no conocer a

alguno de los otorgantes, *haga constar en la escritura que otorga el método supletorio específico de identidad que utilizó para cerciorarse, en forma 'acuciosa y esforzada' de la misma*." Ramírez Lebrón v. Registrador, ante a la pág. 90. (Énfasis en el original y citas omitidas.) Debemos destacar el hecho de que, en dicho caso, en específico, señalamos que al recurrir al método supletorio dispuesto en el Artículo 17 (c) el notario "tiene el deber de denominar, reseñar o indicar el documento de identidad con retrato y firma que utilizó para identificar al otorgante." Ramírez Lebrón v. Registrador, ante, a la pág. 90, esc. 5.

Así pues, resulta que dado el texto claro y terminante de los artículos del Código Civil que hoy nos ocupan, los cuales han estado vigentes desde el año 1889 y la doctrina esbozada por este Tribunal previo al otorgamiento del testamento en controversia, toda la comunidad notarial debió estar al tanto de los requisitos exigidos en cuanto al uso de documentos de identidad como medio supletorio y la dación de fe de conocimiento del testador. Ya hemos advertido sobre la importancia suprema e ineludible de que los notarios observen escrupulosa y cuidadosamente el mandato de ley sobre la comparecencia y conocimiento de los otorgantes. *In re* Ramos Vélez, ante. No podemos, pues, avalar la contención de la Asociación en cuanto a este particular.

Nos señala la Asociación, en segundo término, que los autos del presente caso demuestran que existe una genuina controversia, que debió adjudicarse luego de haberse celebrado

una vista evidenciaria; ello con el propósito de que cada una de las partes presentara prueba en apoyo de sus respectivas alegaciones. Ya hemos expresado que los defectos de que adolecía el testamento bajo análisis eran de fondo y no de forma. Esto es, de ningún modo procedía subsanar su omisión mediante la presentación de evidencia presentada *a posteriori*. Exigiendo la ley que dichas formalidades aparezcan expresamente consignadas en el testamento, lo único que procedía en el caso de marras era evaluar el documento para determinar si las mismas fueron o no consignadas.

Es decir, no había controversia ninguna en torno a si se incluyó o no la dación de fe de conocimiento del testador y tampoco en cuanto a que no se reseñaron los documentos utilizados al identificar a la testadora. La controversia giraba en torno a si la omisión de las referidas formalidades viciaban o no de nulidad absoluta el testamento en cuestión. Esto fue precisamente lo que entendió el Tribunal de Circuito de Apelaciones al señalar que tenía ante sí una controversia de Derecho. Estando claro que no se hizo expresión alguna en el testamento sobre las formalidades que expresamente exige el Código, sólo quedaba analizar el Derecho aplicable al caso, sin que bajo ningún concepto procediera que un tribunal, en una vista evidenciaria, recibiera prueba sobre su cumplimiento. Ello considerando que a tenor con nuestros pronunciamientos, dichas formalidades no pueden ser subsanadas o "curadas" mediante prueba extrínseca.

C

Finalmente, aducen, tanto la Asociación como el peticionario, que el notario autorizante de un documento impugnado debe ser parte indispensable en el procedimiento donde se cuestione la validez del documento. Veamos.

La Regla 16.1 de Procedimiento Civil, 32 L.R.P.A., Ap. III, R. 16.1, define el concepto "parte indispensable" como aquella persona que tiene "un interés común sin cuya presencia no pueda adjudicarse la controversia." A través de los años este Tribunal, al interpretar la referida disposición, ha utilizado, por su fuerza persuasiva, la doctrina y jurisprudencia norteamericana relativa a la Regla 19 de Procedimiento Civil federal.[15] Hemos señalado que una "parte indispensable" es aquella que tiene tal interés en la cuestión envuelta que no puede dictarse un decreto final entre las otras partes sin lesionar y afectar radicalmente sus derechos. Pueblo v. Henneman, 61 D.P.R. 189, 194 (1942); Fuentes v. Tribunal de Distrito, 73 D.P.R. 959, 981 (1952); Cepeda Torres v. García Ortiz, 132 D.P.R. 698, 704 (1993); Rodríguez Rodríguez v. Moreno Rodríguez, 135 D.P.R. 623, 627 (1994); Sánchez Encarnación v. Sánchez Brunet, res. 13 de julio de 2001, 2001 TSPR 107. Esto es, los intereses de esta parte "podrían quedar destruidos o inevitablemente afectados por una sentencia dictada estando esa persona ausente del litigio." Fuentes v. Tribunal de Distrito, ante, a la pag. 981.

---

[15] Nuestra Regla 16 de Procedimiento Civil tiene su origen, o proviene, de la Regla 19 de Procedimiento Civil federal.

Adviértase que no se trata de un mero interés en la controversia sino de aquél de tal orden que impida la confección de un decreto adecuado sin afectarlo. Véase: Hernández Agosto v. López Nieves, 114 D.P.R. 601, 607 (1983); Granados Navedo v. Rodríguez Estrada, 124 D.P.R. 593, 603 (1989); Municipio de Ponce v. Autoridad de Carreteras, et al., res. 29 de diciembre de 2000, 2000 T.S.P.R. 194; Sánchez Encarnación v. Sánchez Brunet, ante. Éste debe ser, además, de índole real e inmediato. Véase: Hernández Agosto v. López Nieves, ante, a las págs. 610-11.

Con relación a la frase "sin cuya presencia no pueda adjudicarse la controversia" hemos precisado que ésta entronca con la antigua doctrina inglesa sobre la indispensabilidad y que en Puerto Rico dicha expresión tiene un alcance limitado. Municipio de Ponce v. Autoridad de Carreteras, ante; Hernández Agosto v. López Nieves, ante, a las págs. 607-08. Así lo establecimos en Municipio de Ponce v. Autoridad de Carreteras, ante, al señalar que "excepto en aquellas circunstancias en las que la adjudicación sin la persona ausente tendría un efecto perjudicial sobre el interés real e inmediato que ésta tiene en el pleito, en raras ocasiones será imposible resolver la controversia sin su presencia." (Énfasis suplido.)

A tenor con lo antes expuesto, este Tribunal ha señalado que la determinación de si una parte debe o no ser considerada como indispensable "debe ser el resultado tan solo de consideraciones pragmáticas, de la evaluación de los intereses envueltos, lo que exige distinguir entre diversos géneros de

casos." Hernández Agosto v. López Nieves, ante, a la pág. 606. Dicha conclusión dependerá de los hechos particulares y específicos del asunto bajo análisis. Granados Navedo v. Rodríguez Estrada, ante, a la pág. 605. Esto último "exige una evaluación jurídica de   factores tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad." Sánchez Encarnación v. Sánchez Brunet, ante.

La persona que reúna dichos criterios tendrá que ser traída al pleito para que tenga validez la sentencia que en su día se dicte. Granados Navedo v. Rodríguez Estrada, ante, a la pág. 603. De este modo, no es suficiente que se le haya informado sobre su oportunidad de intervenir en el pleito, sino que es necesario que se le haya hecho parte. Sobre este particular hemos precisado que la omisión de una parte indispensable, "aunque es motivo para desestimar el pleito, no constituye impedimento para que, a solicitud de la parte interesada, el tribunal pueda conceder la oportunidad de traer al pleito a la parte originalmente omitida, siempre y cuando el tribunal pueda adquirir jurisdicción sobre la misma." Meléndez Gutiérrez v. E.L.A., 113 D.P.R. 811, 816 (1983). Por tratarse de un asunto de vital importancia éste puede ser presentado en apelación por primera vez o aun suscitarse por este Tribunal sua ponte. Hernández Agosto v. López Nieves, ante, a la pág. 603-04.

Por otro lado, debe señalarse que el Artículo 655 del Código Civil, 31 L.P.R.A. sec. 2192, establece que:

"[d]eclarado nulo un testamento abierto, por no haberse observado las solemnidades establecidas para cada caso, el notario que lo haya autorizado será responsable de los daños y perjuicios que sobrevengan, si la falta procediere de su malicia o de negligencia o ignorancia inexcusables." (Énfasis suplido.)

D

Como señaláramos anteriormente, para que una parte sea considerada como "indispensable" en un pleito, es necesario que el interés que tenga en la controversia sea de tal magnitud que sea imposible dictar un decreto final sin que el mismo lesione o destruya radicalmente sus derechos. De así actuarse, se le privaría a esta parte de su debido proceso de ley. Ahora, este interés tiene que ser real e inmediato. No se trata de meras especulaciones o de un interés futuro.

En el caso que hoy ocupa nuestra atención, esto es, en la demanda que origina el mismo, no existe contra el notario Nolla Amado alegación alguna en reclamo de indemnización por daños y perjuicios que pudieran ocasionar un decreto de nulidad testamentaria. De hecho, al presente tampoco existe reclamación alguna al respecto. Y es que la misma no puede, todavía, existir.

Ello así, en primer lugar, llana y sencillamente debido a que los demandantes recurridos no tienen causa de acción alguna contra el notario Nolla Amado. Por el contrario, si tienen éxito en la impugnación del testamento otorgado por el

referido notario, ellos resultarían beneficiados. Por otro lado, la única persona que podría tener una causa de acción contra dicho notario sería el codemandado peticionario Noel A. Santana Igartúa. Dicha causa de acción se concretaría o advendría a la vida jurídica únicamente luego de que el decreto de nulidad del testamento otorgado por éste adviniera final y firme. Ello siempre que el referido peticionario Santana Igartúa pudiera demostrar que la actuación del notario fue una maliciosa o producto de ignorancia o negligencia inexcusables, como lo exige el antes citado Artículo 655 del Código Civil.[16]

En el caso de autos, la controversia planteada en el mismo gira, exclusivamente, en torno a si el testamento otorgado por el notario Nolla Amado adolece, o no, de nulidad absoluta por razón de incumplimiento con ciertas solemnidades de fondo. Somos del criterio que para resolver esa controversia el notario Nolla Amado no resulta ser una "parte indispensable".

Ello por razón de que en cualquier caso de esta naturaleza, en que efectivamente se decrete la nulidad absoluta de un testamento otorgado ante notario, dicha determinación necesariamente no conllevaría perjuicio para éste. Podría suceder que el perjudicado por dicha determinación judicial sobre nulidad testamentaria no radique acción judicial, en daños y perjuicios, contra dicho notario. Aun si así lo hiciera dicho perjudicado, éste, repetimos,

---

[16] Es decir, que no se trató de un mero error de juicio informado y honesto. Véase: Federación Pescadores de Playa Picúas v. U.S. Industries, Inc., 135 D.P.R. 303, 322 (1994).

tendría que demostrar que la falta en que incurrió el notario provino de su malicia o negligencia o ignorancia inexcusables.

Esta es precisamente la conclusión a la que ha llegado el Tribunal Supremo de España ante una alegación de que no procedía dictar sentencia sobre nulidad o validez de un testamento sin que antes se hiciera formar parte del pleito al notario que autorizó el documento. Sentencia del Tribunal Supremo de España de 10 de noviembre de 1979. A esos efectos se expresó:

> [L]a acción de nulidad de un testamento por no haberse observado las formalidades o solemnidades establecidas para el caso, ha de ser forzosamente dirigida contra todos los interesados, entendiéndose por tales los que de manera directa tengan interés en que se mantenga su validez y subsistencia . . . sin que tal acción tenga también que ser necesariamente dirigida contra el Notario que autorizó, y así lo viene estableciendo implícitamente la doctrina jurisprudencial, pudiendo citarse entre otras muchas, las SS. de 15 de marzo 1951 (R. 997), 24 octubre 1963 (R. 4157), 31 enero 1964 (R. 441), 27 septiembre y 15 noviembre 1968 (R. 5163 y 5816), 3 junio 1972 (R. 2597) y 16 diciembre 1975 (R. 4580), todas ellas recaídas en pleitos en los que se ejercitaba una acción de aquella naturaleza sin haber sido demandado el Notario autorizante del testamento, pese a lo cual, esta Sala no estimó la falta de litis consorcio pasivo necesario, como tendría que haberlo hecho incluso de oficio de ser tal circunstancia determinante de una defectuosa constitución de la relación jurídico procesal . . . (Énfasis suplido.)

Comentando esta Sentencia nos señala, de manera categórica, Díez-Picazo que para pedir la declaración de nulidad del testamento, por no haberse observado las solemnidades exigidas por el Código Civil, "no es preciso demandar junto con los

interesas al notario autorizante." Luis Díez-Picazo y
Antonio Gullón, ante, a las págs. 376-77.

Concurrimos con las autoridades y jurisprudencia citadas
en que el funcionario que autoriza un testamento no es parte
indispensable en un pleito donde se pasa juicio sobre la
nulidad o validez de un testamento, sin que, naturalmente, esté
presente una reclamación civil contra dicho funcionario. Esta
es la única conclusión a la que podemos llegar en virtud de
los postulados que sostienen la figura del notario de estirpe
latina,[17] y, sobretodo, los pronunciamientos esbozados por
este Tribunal en torno a la figura de "parte indispensable".

En conclusión, resolvemos que en un pleito en que se
impugne la validez de un testamento otorgado ante notario, éste

---

[17] **Como es sabido, al autorizar un documento el notario da fe y asegura que el mismo cumple con todas las formalidades de ley, que el documento es legal y verdadero, y que se trata de una transacción válida y legítima. In re González Maldonado, res. el 20 de diciembre de 2000, 2000 T.S.P.R. 192. Desde ese momento el documento queda cobijado por la fe pública de manera que todo lo que allí se expresa se tiene por cierto. Se trata, pues, de una presunción *juris tantum* de que todo lo que el notario ha consignado en el documento- incluyendo los actos que ve y oye -es legal y verdadero. *Id.* Sobre este particular dispone el Artículo 2 de la Ley Notarial que la fe pública notarial "es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento." 4 L.P.R.A. sec. 2002.**

Tratándose de un documento notarial que goza de una presunción *juris tantum* de credibilidad, legalidad y certeza, no es necesario que el notario autorizante comparezca a probar, precisamente, esa misma legalidad y certeza. Esto, repetimos, goza de una presunción que habrá de prevalecer en ausencia de evidencia en contrario. El peso de la prueba para derrotar esta presunción recae en la parte que alega la invalidez del documento. Concluir lo contrario transgrede los pilares del Derecho notarial latino; esto es, destruye la presunción de que todo lo que bajo su firma, signo, sello y rúbrica exprese el notario se tendrá por cierto.

no es "parte indispensable" en el mismo, ello por razón de que el posible perjuicio, o lesión, que pueda sufrir dicho notario no es uno real e inmediato, Hernández Agosto v. López Nieves, ante;[18] siendo el mismo, por el contrario, uno contingente, esto es, supeditado a que ocurran en el futuro una serie de eventos y circunstancias que, necesariamente, no tienen que darse.

**VII**

Por los fundamentos expresados, se expide el auto y se confirma la sentencia emitida por el Tribunal de Circuito de Apelaciones en el presente caso.

Se dictará Sentencia de conformidad.

FRANCISCO REBOLLO LÓPEZ
Juez Asociado

---

[18] Ello no obstante, mediante oportuna solicitud del notario autorizante y a su entera discreción, el foro de instancia podrá permitir su intervención en el pleito; ello al amparo de lo dispuesto en la Regla 21.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 21.2.

**EN EL TRIBUNAL SUPREMO DE PUERTO RICO**

Rafael A. Deliz Muñoz, et als.

    **Recurridos**

       vs.                CC-2001-489  CERTIORARI

Diana Igartúa Muñoz, et als.

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 23 enero de 2003

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se expide el auto y se dicta Sentencia confirmatoria de la emitida por el Tribunal de Circuito de Apelaciones en el presente caso.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Naveira de Rodón concurrió con el resultado sin opinión escrita. El Juez Asociado señor Fuster Berlingeri emitió Opinión disidente.

**Patricia Otón Olivieri**
**Secretaria del Tribunal Supremo**

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Rafael A. Deliz Muñoz, Et Als.

    Recurridos


       vs.                              CC-2001-489 Certiorari


Diana Igartúa Muñoz, Et Als.

    Peticionarios


Opinión Disidente emitida por el Juez Asociado señor FUSTER BERLINGERI.


San Juan, Puerto Rico, a 23 de enero de 2003.


La mayoría del Tribunal suscribe una extensa opinión en el caso de autos en la cual se examinan varios asuntos referentes al derecho testamentario. En particular, se dedican muchas páginas a dilucidar los diferentes tipos de formalidades testamentarias y cómo se distinguen; los distintos medios que dispone el ordenamiento jurídico para la identificación del testador por el notario autorizante y la relación entre éstos, y otros asuntos más. Con arreglo a la enjundiosa interpolación de todos estos conceptos, la mayoría llega al resultado de que fue nula la institución del peticionario como único y universal heredero de

los tercios de mejora y libre disposición del caudal

en cuestión.

Debo disentir del aludido dictamen mayoritario porque en mi criterio la mayoría dejó fuera de su análisis la consideración del asunto más importante para decidir el caso de autos. Todo el derecho testamentario existe para el logro de un objetivo cardinal. **Lo que se busca es asegurar que prevalezca la voluntad del testador**. Por ello, en casos en que se impugna de algún modo la validez o eficacia de un testamento, la cuestión más determinante siempre debe ser cuál fue en efecto la última voluntad del testador. El examen de los conceptos normativos pertinentes debe estar supeditado a ese objetivo cardinal que es hacer valer la voluntad del causante. Por ello, para mí no tiene ningún sentido jurídico la opinión de alguno que otro comentarista de que no es válida la institución hereditaria que haya hecho un causante, aunque la voluntad del testador sea conocida en forma indubitada, si esa voluntad se ha manifestado sin observar rigurosamente las solemnidades testamentarias. Tal forma de pensar vira al revés el propósito y razón de ser esencial de esta parte del derecho sucesorio; es decir, convierte erróneamente los medios que el derecho ha establecido para lograr un propósito en algo superior a ese propósito e independiente de éste.

En el caso de autos, se examinan varios esquemas normativos del derecho testamentario, pero nada se dice sobre cuál fue realmente la voluntad del testador aquí. Se anula un testamento por unos errores notariales, pero no se indaga lo que para mí es la cuestión medular del caso. La misión judicial en controversias como la de autos no puede limitarse a dilucidar las reglas más inmediatas que sean aplicables. Debe expandirse el examen jurídico para asegurar que se honre la conocida voluntad del testador, que es en fin de cuentas el asunto más pertinente de esta controversia.

En otras palabras, cuando en un caso como el de autos existe una controversia sobre el carácter o efecto de unas formalidades incumplidas, **la trascendencia de tal incumplimiento debe aquilatarse a la luz de lo que se conoce sobre la voluntad del testador**. Si de la prueba que se ofrece surge de forma segura y auténtica la última voluntad del testador, las formalidades inobservadas no pueden considerarse tan graves como para anular el testamento. Tales formalidades inobservadas quedan curadas por la prueba que establece la voluntad del testador. Este acercamiento a controversias como las del caso de autos, que ya antes reconocimos en Paz v. Fernández, 76 D.P.R. 742, 752 (1954), es la única manera en que realmente puede hacerse valer la voluntad del causante, principio rector del derecho testamentario.

Como la mayoría no sigue el curso decisorio que me parece más propio, disiento.

JAIME B. FUSTER BERLINGERI
JUEZ ASOCIADO