Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-165[1]

| | | |
|---|---|---|
| BANCO POPULAR DE PUERTO RICO<br><br>Demandante-Recurrido<br><br>v.<br><br>SUCESIÓN DE LUCIANO RIVERA ROSARIO COMPUESTA POR LUZ NAYDA RIVERA ORTEGA; JOHN DOE Y RICHARD ROE COMO POSIBLES HEREDEROS DESCONOCIDOS; CENTRO DE RECAUDACIÓN DE INGRESOS MUNICIPALES (CRIM)<br><br>Demandados<br><br><br>LUZ NAYDA RIVERA ORTEGA<br><br>Demandada-Peticionaria | KLCE202300948 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Bayamón<br><br><br>Caso Núm.<br><br>BY2019CV01087<br><br><br>Sala: 503<br><br><br>SOBRE:<br><br><br>ACCIÓN CIVIL DE EJECUCIÓN DE HIPOTECA POR LA VÍA ORDINARIA |

Panel integrado por su presidenta, la Juez Lebrón Nieves, la Jueza Santiago Calderón y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de noviembre de 2023.

Comparece por la peticionaria, Sra. Iris Rodríguez Velázquez para solicitarnos que se revise y deje sin efecto la *Orden* emitida y notificada el 10 de agosto de 2023 por el Tribunal de Primera Instancia, Sala Superior de Bayamón, mediante la cual se le denegó la solicitud de anulación de los procedimientos postsentencia.

Por los fundamentos que expondremos a continuación, se expide el auto de *certiorari* y confirmamos la *Resolución* recurrida.

---

[1] Mediante la Orden Administrativa OATA-2023-165 se designa al Juez Joel A. Cruz Hiraldo en sustitución de la Jueza Eileen J. Barresi Ramos.

I

El presente caso obtuvo su génesis el 5 de marzo de 2019 mediante la radicación de *Demanda* en ejecución de hipoteca por la vía ordinaria *in rem* instada por Banco Popular de Puerto Rico (en adelante, "BPPR") en contra de la Sucesión de Luciano Rivera Rosaria compuesta por Luz Nayda Rivera Ortega, John Doe y Richard Roe como posibles herederos desconocidos (conjuntamente, "Sucesión") y el Centro de Recaudación de Ingresos Municipales (CRIM). BPPR alegó que era tenedora de un pagaré hipotecario, suscrito el 26 de febrero de 1999, por una suma principal de $53,000.00 más interés al 7½% anual, además de otros créditos accesorios, y que no se habían efectuado pagos de la misma desde el 1 de agosto de 2018, adeudando la suma de $32,891.95 de principal más los intereses, primas, recargos, costas y honorarios de abogados. Por último, se indicó que se le notificó copia de la *Demanda* al CRIM con el propósito de que se determine el monto de los gravámenes, si alguno, y que se expresen en torno a cualquier contribución atribuible al inmueble objeto de la *Demanda*.

El CRIM fue emplazado personalmente mientras que la Sucesión fue emplazada por edicto. A solicitud de BPPR, el Tribunal de Primera Instancia le anotó la rebeldía a la parte demandada y luego dictó *Sentencia* a favor de BPPR el 31 de mayo de 2019, notificada el 4 de junio de 2019. La *Sentencia* fue notificada por correo electrónico al demandante BPPR y por edicto a la Sucesión.

El 24 de junio de 2019, la peticionaria compareció por derecho propio y presentó una *Moción Escrito al Expediente Judicial* donde solicitó el cambio de dirección para propósitos de notificación y solicitó una vista de mediación compulsoria. La peticionaria informó que en la dirección anterior existían varias residencias con la misma dirección, por lo que no le llegaba la correspondencia o llegaba de

manera tardía.[2] El 27 de junio de 2019, el foro primario ordenó a Secretaría a añadir la dirección provista al Registro de Notificaciones y le indicó a la peticionaria que para poder referirla al Centro de Mediación "deben comparecer todos los miembros de la sucesión".[3] No obstante, la notificación fue devuelta por el Servicio Postal de Estados Unidos y el Tribunal de Primera Instancia no volvió a notificar a dicha dirección ni a la dirección anterior.[4]

El 8 de julio de 2019, BPPR presentó una *Moción Solicitando Orden de Ejecución de Sentencia* y solicitó el inicio del proceso de ejecución mediante orden del Tribunal. A pesar de que el foro primario emitió las órdenes correspondientes para la ejecución de sentencia y el mandamiento fue diligenciado, el 17 de septiembre de 2019, el Alguacil Regional certificó que, por razones desconocidas, BPPR, mediante su representación legal, suspendió la vista pautada para ese día.[5] Posteriormente, a causa de órdenes administrativas federales y estatales emitidas por la emergencia causada por la pandemia del COVID-19, los procedimientos fueron paralizados. El 18 de noviembre de 2021, BPPR presentó una segunda moción y se continuaron con los procedimientos hasta que BPPR advino en conocimiento de que la peticionaria había radicado una petición ante el Tribunal de Quiebras de Estados Unidos para el Distrito de Puerto Rico, por lo que nuevamente se paralizaron los procedimientos y se dejaron sin efecto las órdenes dictadas.[6]

Acaecidos varios trámites procesales, el 17 de febrero de 2023, BPPR presentó una *Moción Solicitando Nueva Orden de Ejecución de Sentencia* donde solicitó la iniciación del proceso de ejecución

---

[2] La dirección anterior, "Calle Tulipán J8-A, Rpto Valencia, Bayamón, PR 00959", que pertenece al solar objeto de la hipoteca, fue cambiada a "Metropolis Apartments, Ponde de Leon Ave. Street Duarte #1602, San Juan, PR 00917". Véase apéndice del recurso KLCE202300948, pág. 52-53.
[3] Véase apéndice del recurso KLCE202300948, pág. 54.
[4] Véase expediente digital del caso BY2019CV0187 en SUMAC, entrada 28.
[5] Véase apéndice del recurso KLCE202300948, pág. 60.
[6] El caso ante el Tribunal de Quiebras fue desestimado el 8 de diciembre de 2022.

mediante orden del Tribunal y el foro primario emitió *Nueva Orden de Ejecución de Sentencia* el 28 de febrero de 2023.[7] Celebrada la pública subasta y adjudicada la propiedad a tercero, BPPR presentó una moción en la cual solicitó que se dictara orden de confirmación de venta y una segunda moción para el retiro de fondos. El 3 de mayo de 2023, la peticionaria le solicitó al Tribunal que no actuara sobre las mociones presentadas por el BPPR hasta tanto la peticionaria pudiera comparecer mediante representación legal en o antes del 31 de mayo de 2023.

Así las cosas, el 2 de mayo de 2023, notificada el 4 de mayo de 2023, el Tribunal de Primera Instancia emitió órdenes confirmando la adjudicación de la propiedad vendida en pública subasta y declarando Ha Lugar el retiro de fondos con las correspondientes instrucciones. Al día siguiente, el foro *a quo* declaró académica la súplica de la peticionaria. En respuesta, la peticionaria presentó una moción de reconsideración, en la cual alegó que no se le estaba notificando correctamente y solicitó dejar sin efecto las pasadas dos (2) órdenes y que concediera una vista para presentar evidencia sobre irregularidades que conllevan la nulidad de los procedimientos. Ante ello, el Foro de Instancia le concedió a la peticionaria un término de diez (10) días para contratar su representación legal mediante *Orden* emitida el 23 de mayo de 2023.

El 1 de junio de 2023, la peticionaria presentó una *Moción Asumiendo Representación Legal y en Solicitud de que se Anulen los Procedimientos Postsentencia*. En apretada síntesis, la peticionaria arguyó que el CRIM no fue notificado de la *Sentencia* dictada el 31 de mayo de 2019, notificada el 4 de junio de 2019, por lo que incide

---

[7] BPPR también informó que la suma principal de $32,891.95 fue reducida por acuerdo de pago interno a la suma de $32,723.44, más los intereses, costas, gastos y honorarios de abogado, entre otros.

en la finalidad de la sentencia y conlleva la anulación de la venta judicial. El 1 de junio de 2023, notificada al día siguiente, el foro primario declaró Ha Lugar la asunción de representación legal y concedió un término de veinte (20) días a BPPR para presentar su posición en cuanto a la solicitud de anulación de los procedimientos postsentencia. En la oposición, BPPR esgrimió que el CRIM fue notificado de la presentación del caso, del trámite procesal, del hecho de que se dictó sentencia y de los procedimientos posteriores a través de BPPR mediante correo certificado con acuse de recibo. Por el otro lado, argumentó que no existe alegación ni acción en contra del CRIM, que no es parte indispensable y que, por tanto, no se dan las circunstancias que justifiquen la anulación de los procedimientos postsentencia.

Luego de una réplica presentada por la peticionaria, el Tribunal de Primera Instancia informó que la controversia estaba bajo estudio y análisis y que resolvería por escrito. El 10 de agosto de 2023, notificada el mismo día, el foro recurrido declaró No Ha Lugar a las mociones de la peticionaria para anular los procedimientos postsentencia y Ha Lugar a la oposición presentada por BPPR.

Inconforme, el 28 de agosto de 2023, la peticionaria presentó el auto de *certiorari* ante nos con el siguiente señalamiento de error:

> Erró Instancia al declarar No Ha Lugar la solicitud de la parte recurrente de que se anularan los procedimientos postsentencia, por razón de que la sentencia no fue notificada por la Secretaría del Tribunal a una parte en el proceso, conforme a las disposiciones de la Regla 65.3 de Procedimiento Civil.

Habiendo comparecido las partes y presentado sus escritos, damos por perfeccionado el recurso ante nos y procedemos a exponer el derecho aplicable en aras de resolver.

II

**A.** *Certiorari*

El recurso de *certiorari* es un mecanismo procesal de carácter discrecional que le permite a un tribunal de mayor jerarquía revisar las determinaciones del tribunal recurrido.[8] La Regla 52.1 de Procedimiento Civil[9] establece los preceptos que regulan la expedición discrecional que ejerce el Tribunal de Apelaciones sobre el referido recurso para la revisión de resoluciones y órdenes interlocutorias dictadas por el Tribunal de Primera Instancia.[10] En lo pertinente, la Regla 52.1, *supra,* dispone lo siguiente:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.
>
> 32 LPRA Ap. V, R. 52.1

Por otra parte, la Regla 52.2(b)[11] establece los términos y efectos de la presentación de un recurso de *certiorari*:

> (b) *Recurso de "certiorari"*. Los recursos de *certiorari* al Tribunal de Apelaciones para revisar las resoluciones finales en procedimientos de jurisdicción voluntaria [...] deberán ser presentados dentro del término jurisdiccional de treinta (30) días contados

---

[8] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc.*, 212 DPR ___ (2023); *McNeil Healthcare v. Mun. Las Piedras I*, 206 DPR 391, 403 (2021); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012).

[9] 32 LPRA Ap. V, R. 52.1.

[10] *Id.*; *Mun. de Caguas v. JRO Construction*, 201 DPR 703, 709 (2019).

[11] 32 LPRA Ap. V, 52.2(b)

desde el archivo en autos de copia de la notificación de la sentencia o resolución recurrida.

Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia [...] deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari.*

En aquellos casos que mediante recurso de *certiorari* se paralicen los procesos ante el Tribunal de Primera Instancia, el Tribunal de Apelaciones deberá resolver la controversia presentada ante sí dentro de los sesenta (60) días siguientes a que las partes concernidas se hayan expresado.

32 LPRA Ap. V, 52.2(b)

La discreción del tribunal revisor no debe abstraerse del resto del Derecho, y por lo tanto, es una forma de razonabilidad aplicada al discernimiento judicial para así llegar a una conclusión justiciera.[12] Así pues, la discreción judicial para expedir o no el auto de *certiorari* no ocurre en un vacío ni en ausencia de parámetros.[13] Cónsono con lo anterior, la Regla 40 del Reglamento del Tribunal de Apelaciones[14] orienta la función del tribunal intermedio para ejercer sabiamente su facultad discrecional y establece los criterios que debe considerar al determinar si procede o no expedir un auto de *certiorari.*[15] La referida regla dispone lo siguiente:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

---

[12] *Torres González v. Zaragosa Meléndez,* 211 DPR ___ (2023); *Mun. Caguas v. JRO Construction, supra,* 712; *IG Builders et al. v. BBVAPR, supra,* 338.
[13] *Id.*
[14] 4 LPRA Ap. XXII-B, R. 40.
[15] *Torres González v. Zaragosa Meléndez, supra*; *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc., supra*; *Mun. Caguas v. JRO Construction, supra*; *McNeil Healthcare v. Mun. Las Piedras I, supra,* págs. 404-405; *IG Builders et al. v. BBVAPR, supra,* págs. 338-339.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Cabe precisar que el recurso de *certiorari* es un recurso extraordinario discrecional que debe ser utilizado con cautela y solamente por razones de peso.[16] Es por ello que los tribunales revisores deben limitarse a aquellos casos en que la ley no provee un remedio adecuado para corregir el error señalado.[17] Nuestro ordenamiento jurídico ha establecido que el tribunal revisor sólo intervendrá con las facultades discrecionales de los foros primarios en circunstancias extremas y en donde se demuestre que éstos: (1) actuaron con prejuicio o parcialidad; (2) incurrieron en un craso abuso de discreción, o (3) se equivocaron en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[18]

## B. *Partes Indispensables*

La Regla 16.1 de Procedimiento Civil[19] regula el mecanismo procesal de la acumulación de parte indispensable. La referida regla dispone, en lo pertinente, que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". Además, el Tribunal Supremo ha definido una parte indispensable como:

---

[16] *Pueblo v. Díaz De León*, 176 DPR 913, 918 (2009).
[17] *Id.*
[18] *Rivera Gómez v. Arcos Dorados Puerto Rico, Inc., supra*; *Cruz Flores et al.,* 210 DPR 465, 497 (2022); *Rivera y otros v. Banco Popular,* 152 DPR 140, 155 (2000).
[19] 32 LPRA Ap. V, R. 16.1.

Aquella que tiene tal interés en la cuestión envuelta en la controversia que no puede dictarse un decreto final entre las partes en la acción sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia.[20]

La Regla 16.1[21] pretende: (1) proteger las personas ausentes de los posibles efectos perjudiciales que pueda ocasionarles la resolución del caso; (2) emitir una determinación completa; y (3) evitar la multiplicidad de pleitos.[22] La inclusión de una parte indispensable trata de un ejercicio de consideración pragmática de los intereses implicados.[23] A tal efecto, el tribunal deberá examinar los intereses envueltos y distinguir entre los diversos géneros de casos.[24] Ahora bien, el "interés común" que da lugar a la acumulación no es cualquier interés en el pleito sino uno de tal orden que impida la confección de un derecho adecuado sin afectarle o destruirle radicalmente sus derechos.[25] Adicionalmente, dicho interés debe ser real e inmediato, y no cimentado en especulaciones ni en eventos futuros.[26] A su vez, el tribunal deberá auscultar si podrá hacer justicia y conceder un remedio final y completo sin afectar los intereses del ausente.[27]

## C. *Acumulación Indebida de Partes*

La Regla 18 de Procedimiento Civil[28] regula lo respecto a la acumulación indebida de partes y dispone lo siguiente:

La acumulación indebida de partes no constituirá un motivo para desestimar un pleito. Cualquier parte podrá ser incluida o eliminada por orden del tribunal, a iniciativa de éste o por una moción de parte en cualquier estado del procedimiento, bajo las condiciones que sean justas. Cualquier reclamación

---

[20] *FCPR v. ELA et al.*, 2023 TSPR 26; *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014).
[21] 32 LPRA Ap. V, R. 16.1.
[22] *RPR & BJJ, Ex parte*, 207 DPR 389, 407 (2021).
[23] *Cirino González v. Adm. Corrección et al.*, *supra*; *Hernández Agosto v. López Nieves*, 114 DPR 601, 606 (1983).
[24] *Deliz et als. v. Igartúa et als.*, 158 DPR 403, 434 (2003).
[25] *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 223 (2007).
[26] *Id.*
[27] *FCPR v. ELA et al.*, *supra*; *Pérez Rosa v. Morales Rosado, supra*.
[28] 32 LPRA Ap. V, R. 18.

contra una parte puede ser separada y proseguirse independientemente.

### III

La peticionaria planteó que el Tribunal de Primera Instancia erró al no anular los procedimientos postsentencia. Argumentó que la *Sentencia* dictada por dicho foro no fue notificada conforme a las disposiciones de la Regla 65.3 de las Reglas de Procedimiento Civil por no haberse notificado a una parte, el CRIM, y que la *Sentencia* no ha advenido final y firme y, en su consecuencia, el proceso de ejecución de sentencia es nulo. No le asiste la razón. Veamos.

La *Sentencia* dictada por el Tribunal de Primera Instancia no fue dictada en contra del CRIM, pues no existe causa de acción en contra de éste. La *Demanda* no contiene alegación alguna en contra del CRIM y la única mención del CRIM expresamente indica que "se está notificando copia de esta Demanda por Correo Certificado con Acuse de Recibo al [CRIM], para que se determine el monto de gravámenes (si alguno) y para que se expresen en torno a cualquier contribución, si alguna, atribu[i]ble al inmueble objeto de esta acción".[29] La *Demanda*, y consecuentemente el pleito, siempre fue en contra de la Sucesión de Luciano Rivera Rosario y no contra el CRIM. Por tanto, la *Sentencia* se dictó única y exclusivamente contra la Sucesión de Luciano Rivera Rosario.

A pesar de haber sido emplazada, el CRIM nunca compareció en el caso de epígrafe debido a que no existió una causa de acción en su contra y, por ende, no existió derecho, propiedad o interés de éste que pudiera haber sido afectado por un decreto final. En otras palabras, no existió razón o motivo que exigiera su comparecencia. Incluso, el pleito se dilucidó en su totalidad sin efecto alguno en los derechos o propiedad del CRIM. Sin duda alguna, el CRIM no es

---

[29] Véase apéndice del recurso KLCE202300948, pág. 3.

parte indispensable y no posee un interés común en este pleito, por lo que nunca debió ser parte del pleito.

Ciertamente, lo ocurrido aquí fue una acumulación indebida de parte que quedó desatendida por el foro *a quo*. El CRIM no tiene y nunca tuvo un interés que ameritara su acumulación como parte, por lo que debió haberse eliminado como parte, conforme lo dispuesto en la Regla 18 de Procedimiento Civil[30], y proseguirse el pleito contra la Sucesión de Luciano Rivera Rosario. El propósito de incluir como parte al CRIM, según surge de la *Demanda,* se podía cumplir con la mera notificación de copia de la *Demanda* al CRIM, sin emplazar y convertir en parte a éste.

Ante estas circunstancias, el curso a proceder sería la eliminación del CRIM como parte en el caso de epígrafe y no la anulación de los procedimientos posteriores a la sentencia. Como mostramos anteriormente, la Regla 18 de Procedimiento Civil[31] permite la eliminación de una parte en cualquier etapa del procedimiento, bajo las condiciones que sean justas. En el ejercicio de un balance de intereses, no resultaría perjudicial a ninguna de las partes la eliminación del CRIM como parte. Actuar al contrario, o sea, mantener al CRIM como parte en un pleito del cual no existe causa de acción en su contra y anular los procedimientos posteriores a la *Sentencia,* resultaría considerablemente perjudicial a las partes y causaría un atraso significativo de los procedimientos, contrario al principio de la eficiente administración de la justicia.

En ausencia de prejuicio, parcialidad, abuso de discreción o error de derecho, no amerita nuestra intervención en la *Resolución* recurrida, por lo cual no procede la anulación de los procedimientos posterior a la *Sentencia.*

IV

---

[30] 32 LPRA Ap. V, R. 18.
[31] *Id*

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, se expide el auto de *certiorari* y confirmamos la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones