Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| LUCINDA RUIZ RIVERA Y OTROS<br><br>Demandante - Apelantes<br><br>v.<br><br>ALICE EDERY Y OTROS<br><br>Demandados - Apelados | KLAN202500244 | Apelación procedente del Tribunal de Primera Instancia, Sala de Aguada<br><br>Civil núm.: AU2024CV00184<br><br>Sobre:  Nulidad / Impugnación de Testamento |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio y el Juez Rodríguez Flores.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de mayo de 2025.

En conexión con una disputa sobre la validez de un testamento, el Tribunal de Primera Instancia ("TPI"), por la vía sumaria, resolvió la controversia de derecho que las partes expusieron existía al respecto y concluyó que era válido el testamento.  Según se explica en detalle a continuación, concluimos que procede la confirmación de la sentencia apelada, ante la indisputada nulidad de un testamento posterior mediante el cual se pretendió dejar sin efecto un testamento anterior, y ante el hecho de que las partes no le presentaron al TPI controversia adicional alguna que pudiese incidir sobre la validez del testamento anterior.

I.

En marzo de 2024, Lucinda Ruiz Rivera, Maricelys Ruiz Rivera y Juan Luis Ruiz Rivera (los "Demandantes") presentaron la acción de referencia, sobre nulidad de testamento, en contra de los demás miembros de la sucesión de su padre, el Sr. Juan Ruiz Valentín (el "Causante"), entiéndase: Alice Edery (la "Viuda"), Leslie Ruiz Rivera, Sheila Ruiz Rivera, Celimar Ruiz Rivera, Valeria Pierluisi Ruiz, Cristina López Ruiz y William López Ruiz (los "Demandados").

Se alegó que el Causante falleció el 29 de marzo de 2023 y que, en septiembre de 2022, en el estado de Florida, había otorgado "un documento titulado 'last will'" (el "Segundo Testamento"), el cual luego fue protocolizado, mediante Escritura Pública 53 otorgada el 16 de septiembre de 2022, ante el notario George Michael Uzdavinis Vélez.

Los Demandantes solicitaron que el TPI declarase nulo el Segundo Testamento debido a que no cumplía con las leyes de Florida ni con las de Puerto Rico. En la alternativa, alegaron que no era eficaz la desheredación que se pretendió mediante el Segundo Testamento.

Luego de algunos incidentes procesales, la Viuda instó una *Contestación a la Demanda y Reconvención.* En cuanto al Segundo Testamento, admitió que el mismo no cumplía con los requisitos aplicables. En la *Reconvención,* la Viuda indicó que, en mayo de 2019, el Causante había otorgado un testamento anterior (el "Primer Testamento"), en Mayagüez, ante un notario (Lcdo. George Michael Uzdavinis Vélez). Mediante el mecanismo de sentencia declaratoria, **la Viuda solicitó que se declarase válido y eficaz el Primer Testamento**.

Los Demandantes contestaron la reconvención presentada por la Viuda; plantearon que el Primer Testamento no era válido ante la ausencia de una expresión del Causante en cuanto a que, de ser revocado el testamento revocatorio, subsistiría el testamento anterior. Es decir, expusieron que, para que el Primer Testamento "tuviese validez ante la nulidad" del Segundo Testamento, el Causante "tenía expresamente que manifestar que en caso de nulidad las disposiciones testamentarias anteriores serían eficaces, lo cual no hizo a pesar de que expresamente revocó" el Primer Testamento.

Al cabo de algunos trámites procesales, tres de las demandadas presentaron una *Solicitud de Sentencia Sumaria Parcial.* En síntesis, alegaron que no existía una controversia de hechos sustancial que le impidiera al TPI decretar la nulidad del Segundo Testamento.

Por su parte, los Demandantes también expusieron que el Segundo Testamento carecía de validez jurídica por no cumplir con la ley del estado de Florida, ni con las leyes de Puerto Rico. La Viuda asumió la misma postura en cuanto al Segundo Testamento, mas **insistió en su solicitud de que, como consecuencia, se declarara vigente y eficaz del Primer Testamento**.

El 13 de noviembre, el TPI notificó una *Sentencia Parcial* mediante la cual determinó que el Segundo Testamento era nulo.

El 3 de diciembre, los Demandantes presentaron una *Moción Solicitando al Tribunal que Dicte Sentencia Sumaria.* **Los Demandantes destacaron que la controversia ante el TPI era estrictamente jurídica o de derecho**: determinar si, declarado nulo el Segundo Testamento, quedaba o no en vigor el Primer Testamento. Los Demandantes reiteraron su teoría jurídica a los efectos de que el Primer Testamento no era válido porque el Causante no expresó en el Segundo Testamento que, de ser revocado el mismo, se mantendría vigente el Primer Testamento. Subrayaron que, en el Segundo Testamento, el Causante manifestó su intención inequívoca de dejar sin efecto el Primer Testamento.

La Viuda se opuso a esta moción de los Demandantes; reiteró que, al haberse declarado nulo el Segundo Testamento, no tenía consecuencia alguna que el Causante, en el mismo, consignara su intención de dejar sin efecto el Primer Testamento. Por consiguiente, **solicitó al TPI que declarase válido el Primer Testamento**.

El 26 de febrero de 2025, el TPI notificó una *Sentencia Sumaria* (la "Sentencia"), mediante la cual declaró con lugar la reconvención de la Viuda y, así, determinó que era válido el Primer Testamento. El TPI razonó que, para que surta efecto una revocación expresa de un testamento previo, dicho testamento revocatorio deber ser eficaz. En el caso de autos, al no haber controversia sobre la nulidad del Segundo Testamento, el mismo se considera inexistente, junto con lo allí consignado en cuanto a la revocación del Primer Testamento.

El 24 de marzo, los Demandantes presentaron el presente recurso de apelación de la Sentencia; formulan los siguientes seis (6) señalamientos de error:

1. Erró el Honorable Tribunal de Primera Instancia al dictar sentencia sumaria cuando existen múltiples hechos materiales y esenciales que están en controversia que giran en torno a la validez y eficacia del testamento de 2019.

2. Erró el Honorable Tribunal de Primera Instancia al dictar sentencia sumaria cuando existen diversas alegaciones afirmativas sobre hechos sustanciales y/o (sic) materiales que fueron presentados por los Ruiz Rivera desde la presentación de la Demanda, y en sus otros escritos, que no fueron controvertidos por Edery y fueron pasados por alto por el TPI en su sentencia sumaria.

3. Erró el Honorable Tribunal de Primera Instancia al dictar sentencia sumaria cuando surge de los propios documentos que forman parte del expediente del caso diversas controversias materiales y/o (sic) sustanciales que hacen obligatoria y necesaria la celebración de una vista evidenciaria.

4. Erró el Honorable Tribunal de Primera Instancia al dictar sentencia sumaria adoptando como hechos incontrovertidos alegaciones conclusorias que Edery incluyó en su moción de sentencia sumaria que no pueden ser tomadas como hechos materiales incontrovertidos.

5. Erró el Honorable Tribunal de Primera Instancia al dictar sentencia sumaria sin celebrar una vista evidenciaria sobre la capacidad del causante Ruiz Valentín cuando otorgo el testamento de 2019.

6. Erró el Honorable Tribunal de Primera Instancia al declarar Con Lugar la reconvención presentada por

Ederly (sic), despojando a los Ruiz Rivera de su día en corte y de su derecho a un debido proceso de ley.

Por su parte, la Viuda presentó un alegato en oposición. Resolvemos.

II.

La sentencia sumaria es un mecanismo procesal que se utiliza para lograr la solución justa, rápida y económica de una controversia donde resulta innecesario celebrar un juicio en su fondo. *Meléndez González v. M. Cuebas, Inc.*, 193 DPR 100, 109 (2015). Este mecanismo procede cuando no existe una controversia real sobre hechos materiales. Un hecho es material cuando puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Ramos Pérez v. Univisión*, 178 DPR 200, 213 (2010).

La Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3, impone un número de requisitos tanto al proponente de la sentencia sumaria como al que se opone a la misma. La moción de sentencia sumaria debe contener: una exposición breve de las alegaciones de las partes, los asuntos litigiosos en controversia, la causa de acción sobre la cual se solicita la sentencia sumaria, una relación concisa y organizada en párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia, con indicación de los párrafos o páginas de la prueba documental donde se establecen los mismos, la argumentación del derecho aplicable y el remedio que se solicita. 32 LPRA Ap. V, R. 36.3(a).

De igual forma, la parte que se opone a la sentencia sumaria tiene que cumplir con las exigencias de la Regla 36. En particular, debe enumerar aquellos hechos materiales de buena fe controvertidos y aquellos sobre los cuales no hay controversia. En ambos casos, por cada hecho, se tienen que indicar los párrafos o

páginas de la prueba documental que establecen o impugnan ese hecho. 32 LPRA Ap. V, R. 36.3(b). Así pues, la parte que se opone a que se dicte sentencia sumariamente "no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que estará obligada a contestar en forma tan detallada y específica, como lo haya hecho la parte promovente". 32 LPRA Ap. V, R. 36.3(c). Los hechos enumerados en la moción de sentencia sumaria que no sean debidamente controvertidos podrán considerarse admitidos. 32 LPRA Ap. V, R. 36.3(d). De forma similar, "[e]l tribunal no tendrá la obligación de considerar aquellos hechos que no han sido específicamente enumerados". *Íd.*

Claro está, cuando un tribunal evalúa y analiza una moción de sentencia sumaria, no está obligado a resolverla apoyado únicamente en los documentos que se presentan con la moción, sino que se deben considerar todos los documentos en los autos en los que surja alguna admisión hecha por alguna de las partes. *Const. José Carro v. Mun. Dorado*, 186 DPR 113, 130 (2912). De haber alguna duda acerca de la existencia de una controversia sobre los hechos medulares y sustanciales del caso deberá resolverse contra la parte que solicita la moción, haciendo necesaria la celebración de un juicio. *Rivera et al. v. Superior Pkg., Inc. et al.*, 132 DPR 115, 133 (1992). (Citas en el original suprimidas).

Además, la omisión en presentar evidencia que rebata aquella presentada por el promovente, no necesariamente implica que procede dictar sentencia sumaria de forma automática. *Mun. de Añasco v. ASES et al.*, 188 DPR 307, 327 (2013); *Córdova Dexter v. Sucn. Ferraiuoli*, 182 DPR 541, 556 (2011); *González Aristud v. Hosp. Pavía*, 168 DPR 127, 138 (2006). Solo procede que un tribunal dicte sentencia sumariamente cuando, de las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas y otra evidencia, no surja controversia real

sustancial sobre algún hecho material y, además, proceda como cuestión de derecho. 32 LPRA Ap. V, R. 36.3(e). Es decir, "cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y el Tribunal cuenta con la verdad de todos los hechos necesarios para poder resolver la controversia". *Meléndez González*, 193 DPR a las págs. 109-110, citando a *Const. José Carro v. Mun. Dorado*, 186 DPR a la pág. 129 y a *Nieves Díaz v. González Massas*, 178 DPR 820, 868 (2010).

III.

Concluimos que los errores señalados por los Demandantes no se cometieron. En esencia, los Demandantes señalan que el TPI estaba impedido de adjudicar el caso por la vía sumaria ante una controversia fáctica en torno a la capacidad del Causante al otorgar el Primer Testamento. No obstante, la realidad es que, ante el TPI, en momento alguno los Demandantes alegaron que el Causante careciera de capacidad para otorgar el Primer Testamento; de hecho, descansaron en la capacidad del Causante al otorgar el Segundo Testamento para plantear que debía respetarse la voluntad allí expresada de dejar sin efecto el Primer Testamento. Por tanto, el TPI actuó correctamente al resolver por la vía sumaria la disputa jurídica en torno a la validez del Primer Testamento.

En efecto, fueron los Demandantes quienes, al solicitar la resolución sumaria del caso, expusieron que la controversia ante el TPI era una "estrictamente jurídica o de derecho".[1] Asimismo, surge de la *Minuta* correspondiente a la vista celebrada el 23 de septiembre de 2024, que el representante legal de los Demandantes aclaró lo siguiente:

> ...[Q]ue la nueva ley tiene un artículo que establece que, en un testamento revocatorio, para que el testamento

---

[1] Véase, *Moción Solicitando al Tribunal que Dicte Sentencia Sumaria*, Apéndice 12 del recurso de apelación, pág. 77.

anterior tenga validez, tendría que disponerse que, de declararse nulo, entonces entraría en vigor el anterior, cláusula que el testamento no tiene.  Añadió que, con ese escenario, hay una Sucesión intestada, que se **puede resolver en estricto derecho**.  (Énfasis provisto).[2]

Más aún, del récord ante el TPI no surge alegación alguna de los Demandantes en cuanto a una supuesta incapacidad del Causante para otorgar el Primer Testamento.  En la Demanda no se alega nada al respecto[3].  Tampoco se alegó nada sobre ello en la contestación a la reconvención de la Viuda, mediante la cual esta solicitó, precisamente, que se declarara válido el Primer Testamento.  De forma similar, aunque en su primera solicitud de sentencia sumaria, los Demandantes señalaron que en el Segundo Testamento no se dio fe sobre la capacidad del Causante, no se planteó que hubiese controversia sobre dicha capacidad en cuanto al Primer Testamento.[4]  Así pues, a pesar de haber tenido varias oportunidades, los Demandantes no alegaron ante el TPI hecho alguno que colocara en controversia la capacidad del Causante para otorgar el Primer testamento.

De hecho, lejos de impugnar dicha capacidad, los Demandantes presumieron la misma al sostener que debía respetarse la voluntad del Causante, consignada en el Segundo Testamento, en cuanto a la revocación del Primer Testamento.  Por ejemplo, en las *Defensas Afirmativas* de la *Contestación a Reconvención,* los Demandantes afirmaron "que el propio testador optó por testar bajo la nueva ley" y que el Causante "expresamente revocó dicho testamento".[5]

---

[2] Véase, *Minuta*, Apéndice 6 del recurso de apelación, pág. 30.

[3] Aunque en la Demanda se hizo alusión a que, en fechas anteriores y posteriores al otorgamiento del Segundo Testamento, el Causante "sufrió serias afecciones de salud que afectaron seriamente sus habilidades cognitivas y su capacidad", los Demandantes se abstuvieron de alegar que el Causante careciera de capacidad suficiente al otorgar el Primer Testamento.

[4] Véase, *Moción Solicitando Sentencia Sumaria Parcial,* Apéndice 8 del recurso, pág. 59.

[5] Véase, *Contestación a Reconvención*, Apéndice 4 del recurso de apelación, pág. 20.

Cónsono con todo lo anterior, los propios Demandantes solicitaron la resolución por la vía sumaria de la controversia de derecho entre las partes. Los Demandantes tuvieron la oportunidad de solicitar autorización para enmendar las alegaciones de la Demanda y no lo hicieron. Asimismo, el TPI celebró dos vistas en las que las partes argumentaron sus respectivas posturas en cuanto al efecto de una declaración de nulidad del Segundo Testamento sobre el Primer Testamento.[6] Destacamos que, de acuerdo con la *Minuta* de la vista celebrada el 13 de noviembre de 2024: "**Se discutió y abundó sobre la vigencia del testamento del 2019**, la reconvención de la licenciada Álvarez y la contestación del licenciado Hernández".[7] (Énfasis provisto).

En cuanto a los méritos de la controversia de derecho resuelta por el TPI, concluimos que tampoco tienen razón los Demandantes. Un testamento nulo no puede utilizarse como evidencia "extrínseca" para establecer la intención de revocar un anterior testamento. Son tan "esenciales los requisitos y las solemnidades *exigidos por la ley* para la eficacia de las últimas voluntades, la falta de cualquiera de ellas es por sí solo suficiente para privar de eficacia el acto testamentario". *Deliz et als. v. Igartúa et als*, 158 DPR 403, 415 (2003), citando a Q.M. Scaevola, *Código Civil Comentado y Concordado,* 2da ed., Madrid, Ed. Reus, 1950, T. XII, pág. 363, (Énfasis en el original). No es suficiente que se conozca de forma indubitada la voluntad del testador, "ya que esa voluntad será ineficaz si al manifestarla no se han observado rigurosamente las solemnidades que para cada clase de testamento establece la ley". Íd, citando a Ossorio Morales, *Manual de Sucesión Testada*, Madrid, Ed. Inst. Estudios Políticos, 1957, pág. 466. Por ende, la voluntad

---

[6] Véanse, *Minuta* de 23 de septiembre de 2024, Apéndice 6 del recurso de apelación, pág. 30; *Minuta* de 13 de noviembre de 2024, Apéndice 11 del recurso de apelación págs. 74-75.
[7] *Íd.*, a la pág. 75.

de un testador plasmada en un testamento nulo es tan ineficaz como el propio testamento.

Resaltamos que el Artículo 1716 del Código Civil, sobre la revocación del testamento revocatorio, 31 LPRA sec. 11379,[8] no aplica a la controversia de autos debido a que **el Causante no revocó el Segundo Testamento**. Por el contrario, el Segundo Testamento fue declarado nulo *ab initio* por el TPI. Al no existir jurídicamente el Segundo Testamento, tampoco existe la revocación del Primer Testamento allí contenida. Por consiguiente, y en ausencia de algún otro planteamiento pertinente, procedía que el TPI, como solicitó la Viuda, declarase la validez del Primer Testamento.

IV.

Por los fundamentos que anteceden, se confirma la *Sentencia Sumaria* apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] El Artículo 1716 del Código Civil, lee:
Si el testamento revocatorio es, a su vez, revocado, las disposiciones del primero solamente son eficaces cuando el testador así lo manifiesta expresamente.