Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| SONIA PALACIOS<br><br>Querellante-Recurrida<br><br>V.<br><br>CONSEJO DE TITULARES COND. MAR CHIQUITA OCEAN VIEW<br><br>Querellados-Recurridos<br><br>**MAR CHIQUITA HOUSING INVESTMENT, LLC**<br><br>**Recurrente** | KLRA202500342 | *Revisión de Decisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: C-SAN-2022-0011409<br><br>Sobre: Condominios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Jueza Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 18 de julio de 2025.

El día 9 de junio de 2025 compareció ante este foro revisor Mar Chiquita Housing Investment, LLC, (en adelante, MCHI o parte recurrente) mediante *Recurso de Revisión Judicial*, en el que nos solicita la revisión de la *Resolución* emitida el 6 de mayo de 2025 y notificada el día 8 del mismo mes y año, por el Departamento de Asuntos al Consumidor (en adelante, el DACo). Mediante su dictamen, el ente administrativo declaró *Ha Lugar* la *Querella* interpuesta por la señora Sonia Palacios (en adelante, señora Palacios o parte recurrida) y declaró nulo e ilegal un acuerdo entre el Consejo de Titulares del Condominio Mar Chiquita Ocean View (en adelante, el Consejo de Titulares o la parte recurrida), propuesto por MCHI y aprobado en la Asamblea celebrada el 23 de abril de 2022. En consecuencia, el DACo ordenó la devolución a la cuenta

Número Identificador

SEN2025 _____

de reserva, la suma de doce mil seiscientos dólares ($12,600.00), que figuraban como parte del aludido acuerdo.

Por los fundamentos que expondremos a continuación, se *revoca* la *Resolución* recurrida.

**I**

El caso que nos ocupa tiene su génesis en una *Querella* interpuesta el 23 de mayo de 2022 ante el DACo por la titular Sonia Palacios en contra del Consejo de Titulares y notificada a este último por el DACo, el 7 de junio de 2022. En la aludida *Querella*, la señora Palacios impugnó una determinación aprobada por el Consejo en la Asamblea Ordinaria celebrada el 23 de abril de 2022, en la que se consideró lo siguiente:

> 2. Presentación para aprobación de propuesta por parte de Mar Chiquita Housing Investment, LLc. (en lo sucesivo MCHI, LLc.)
>
> Para la discusión del segundo punto, había que decidir:
>
> - Qué hacer con la deuda de $11,174.30, que se reclama a la titular MCHI, LLc., de cuotas de mantenimiento correspondientes a los meses de diciembre 2013 y enero 2014 (conforme a Resolución del DAco del 7 de octubre de 2015) las cuales no ha pagado; y
>
> - qué hacer con otra reclamación que hace MCHI, LLc., para que se le devuelva el pago de $12,600 ($450 por cada uno de sus 28 apartamentos) que había pagado el 27 de diciembre de 2013, (se refiere al pago que hizo cumpliendo con la sección 6.2 del Reglamento del CMCOV, y que minutos antes el Consejo de Titulares acababa de ratificar.)

Conforme surge de la *Querella*, en el Acta de la Asamblea se registró una votación de 18 votos a favor y 15 en contra de devolver y acreditar los $12,600.00, según solicitado por MCHI.

En atención a la referida *Querella*, el 8 de agosto de 2022, compareció el Consejo de Titulares ante la agencia recurrida mediante *Solicitud de Breve Prórroga para Contestar Querella*, en la que solicitó el término de diez (10) días para contestar la misma. Respecto al aludido petitorio, el 12 de agosto de 2022, la señora

Palacios interpuso ante el DACo, *Moción Allanándonos a la Solicitud de Prórroga Solicitada, y Solicitud de que se Refiera la Querella de Epígrafe a Mediación.* El 15 de febrero de 2023, el Consejo de Titulares presentó ante el DACo *Contestación a Querella.*

Como parte de las incidencias procesales, hubo varias citaciones y posposiciones a vista administrativa, las cuales son innecesarias pormenorizar.

El Consejo de Titulares presentó ante la agencia recurrida *Moción de Falta de Parte Indispensable* fechada 25 de octubre de 2023. El 17 de noviembre de 2023, la señora Palacios se opuso mediante *Moción en Oposición a la Falta de parte Indispensable.* En respuesta, el Consejo de Titulares interpuso *Réplica a Moción en Oposición a la Falta de Parte indispensable* fechada 4 de diciembre de 2023. En síntesis, el Consejo sostuvo que, a pesar de que la parte querellante alega que el caso es contra el Consejo de Titulares del cual forma parte es parte MCHI por ser titular de varias unidades, las alegaciones de la Querella afectan directamente a MCHI. Añadió que, la empresa de MCHI le presentó a la Junta de Directores una propuesta de transacción de acciones radicadas en foros judiciales y administrativos, cuyas determinaciones tienen efectos significativos, específicamente, relacionados con el cobro, pago, reclamo y futuras imposiciones a los titulares del Condominio Mar Chiquita Ocean View.

Luego, la señora Palacios presentó ante el DACo *Moción Solicitando se Tengan por no Puestos Escritos por Incumplimiento con Ley de Condominio* fechada 11 de octubre de 2024. Subsiguientemente, el 17 de octubre de 2024, la señora Palacios interpuso ante dicho foro administrativo *Moción Solicitando Resolución Sumaria.* El 23 de octubre de 2024, el DACo le concedió al Consejo de Titulares el término de quince (15) días para oponerse a la solicitud de la parte querellante.

Transcurridos en exceso de 60 días sin que el Consejo de Titulares se expresara en torno a la *Moción Solicitando Resolución Sumaria*, el DACo, mediante *Resolución* emitida el 6 de mayo de 2025 y notificada el 8 de mayo de 2025, declaró *Ha Lugar* la *Querella* incoada por la señora Palacios y determinó lo siguiente:

**DETERMINACIONES DE HECHO:**

1. La querellante es titular del apartamento 606 del Condominio Mar Chiquita Ocean View mediante escritura de Individualización, Liberación y Compraventa otorgada el 4 de marzo de 2010 ante el notario Miguel Bauzá Rolón.

2. El Condominio Mar Chiquita Ocean View se encuentra sometido al régimen de propiedad horizontal.

3. Anteriormente, se presentó en este Departamento la querella SJ0011657 por parte de Mar Chiquita Housing Investment en contra del Consejo de Titulares del Condominio. Mediante Resolución emitida en el 2015, este Departamento declaró con lugar la querella y ordenó a la Junta de Directores del condominio Mar Chiquita Ocean View abstenerse de cobrar a la entonces querellante cualquier suma de dinero desde febrero de 2013 hasta noviembre de 2013.

4. En la referida Resolución, este Departamento determinó que luego de noviembre de 2013 la entonces querellante debía pagar las cuotas de mantenimiento y que además las asambleas celebradas para esa fecha y enero de 2014 no habían sido impugnadas y eran para todos los efectos legales.

5. El Reglamento del Condominio Mar Chiquita Ocean View dispone que a todos los titulares les será cobrada una cantidad de dinero al momento de la compraventa para ser depositados en la Cuenta de reserva. La cantidad sería establecida en la escritura de compraventa. La parte querellante bajo la querella SJ0011657, Mar Chiquita Housing Investment, realizó los pagos correspondientes a cada apartamento para la Cuenta de Reserva, mas no realizó los pagos correspondientes a las cuotas de mantenimiento para los meses de diciembre 2014 y enero 2014.

6. Lo anterior provocó que ese titular adeudase la suma de $11,174.30, a pesar de que este foro determinó que las asambleas donde se establecieron esas cuotas de mantenimiento eran legales.

7. En específico, el Reglamento del Condominio Mar Chiquita Ocean View dispone "*Los titulares de las unidades se obligan a contribuir en su parte proporcional a los gastos comunes de administración y mantenimiento y reparación de los elementos comunes generales, incluyendo el pago del seguro del edificio y, en los casos*

*adecuados, de los elementos comunes limitados, si alguno, del edificio, y para cualesquiera otros gastos legalmente convenidos. Asimismo, contribuirán a un fondo de reserva para operación y mantenimiento del edificio, el cual se mantendrá en una cuenta de reserva a favor de la Asociación de Condómines de CONDOMINIO "MAR CHIQUITA OCEAN VIEW". La cantidad estipulada para engrosar dichos fondos será pagada al momento del otorgamiento de las correspondientes escrituras de venta".*

8. El pago que realizó Mar Chiquita Housing Invesment por concepto de aportaciones el Fondo de Reserva, fue para el mes de diciembre de 2013 mientras se encontraba pendiente antes este foro la querella que había incoado.

9. El 23 de abril de 2022, se celebró una Asamblea Ordinaria en el Condominio Mar Chiquita Ocean View. Como parte de la agenda, el Consejo de Titulares tuvo ante su consideración y aprobó retirar de la Cuenta de Reserva la cantidad de $12,600.00 que había pagado Mar Chiquita Housing Investment para acreditarlos a la deuda de $11,174.30 que mantenía por concepto de mantenimiento para los meses de diciembre 2013 y enero 2014.

10. La actuación del Consejo de Titulares del Condominio Mar Chiquita Ocean View fue contraria a derecho.

11. El pago realizado por Mar Chiquita Housing Investment no formaba parte del cobro que este foro determinó era improcedente, por lo que venía obligada a realizarlo.

12. En la misma asamblea de 23 de abril de 2022, el Consejo de Titulares aprobó continuar cobrando $450.00 a todo nuevo dueño y mantener vigente la disposición del Reglamento sobre el particular. Además, se acordó que se cobraría a todo aquel titular al cual que se había dejado de cobrar por ese concepto.

13. La querellante impugna la determinación del Consejo de Titulares de sustraer de la cuenta de reserva la suma de $12,600.00 para adjudicarlos a la deuda que por concepto de mantenimiento mantenía Mar Chiquita Housing Investment[1].

Finalmente, dictaminó de la siguiente forma:

Se declara **ha lugar** la querella de epígrafe.

---

[1] Véase, págs. 002-004, del Apéndice del recurso de la parte recurrente. Véase, también, pág. 257, del Apéndice del recurso de la parte recurrente. Copia del cheque número 214 del 27 de diciembre de 2013 por la cantidad de $12,600.00. Una nota en manuscrito calcula la cuota de mantenimiento y reserva por 28 apartamentos a $450 cada uno.

> Se declara nulo e ilegal el acuerdo del Consejo de Titulares alcanzado en la asamblea celebrada el 23 de abril de 2022. La cantidad de $12,600.00, transferida ilegalmente, deberá ser devuelta a la cuenta de reserva.

En desacuerdo con tal determinación, el 9 de junio de 2025, MCHI compareció ante este foro revisor y esgrimió los siguientes señalamientos de error:

1. Erró DACo al adjudicar la querella núm.: C-SAN-2022-0011409 sin tener jurisdicción para ello, pues MCHI – quien es parte indispensable – nunca fue incluido en el proceso adjudicativo en cuestión. La omisión de una parte indispensable viola el debido proceso de ley, que es un derecho fundamental tutelado por nuestra Constitución, y hace que la Resolución dictada por la agencia carezca de jurisdicción sobre la persona, tornándola nula.

2. En la alternativa, de este Honorable foro considerar que no existe ningún vicio jurisdiccional por parte de la agencia – lo que negamos –, erró DACo al declarar sumariamente nulo e ilegal el acuerdo estipulado entre el Consejo de Titulares del condominio y MCHI por entender que la cantidad de $12,600.00 era parte del fondo de reserva del condominio, cuando la realidad es que nunca lo fue.

En atención al recurso incoado, mediante nuestra *Resolución* del 13 de junio de 2025, le ordenamos a la parte recurrente que nos acreditara en o antes del miércoles 18 de junio de 2025, haber notificado copia del presente recurso a las partes y a la agencia recurrida, según lo dispone la Regla 58 (B) de nuestro Reglamento[2]. Le apercibimos que, el incumplimiento con lo ordenado daría lugar a la desestimación del recurso.

De otra parte, le concedimos a la parte recurrida hasta el miércoles 9 de julio de 2025 para presentar su alegato en oposición. Le advertimos que, transcurrido dicho término, el recurso se entendería perfeccionado para su adjudicación final. Asimismo, le ordenamos al DACo que nos sometiera copia certificada del expediente C-SAN-2022-0011409.

---

[2] 4 LPRA Ap. XXII-B, R. 58(B).

En cumplimiento con lo ordenado, compareció el Consejo de Titulares el 9 de julio de 2025 mediante *Alegato en Oposición a Recurso de Revisión*. Puntualizó que, el 25 de octubre de 2023, interpuso ante la agencia recurrida *Moción de falta de parte indispensable*. En la misma, solicitó que se ordenara incluir a MCHI como parte indispensable debido al acuerdo transaccional propuesto por MCHI y aprobado por el Consejo de Titulares sobre devolución de dinero a MCHI y la acreditación del monto a su deuda activa. Indicó que, la aludida moción fue declarada no ha lugar por la agencia, empero optó por no cuestionar dicha determinación. No empece lo anterior, en su comparecencia ante este foro revisor, el Consejo sostuvo que, MCHI fue la entidad proponente del acuerdo, por lo cual entiende que es necesaria su inclusión en el pleito.

Por otro lado, aunque el Consejo de Titulares reconoció los beneficios contributivos y fiscales de los que goza la figura del inversionista institucional certificado, en virtud de la *Ley de Estímulo de Compra e Inversión sobre el Inventario Acumulado de Vivienda* (Ley Núm. 226-2011, 25 LPRA, Sec. 10731 nota, *et. seq.*), hizo hincapié en que este tipo de figura no es distinta a la del condómino tradicional como aduce la parte recurrente.

A su vez, ese mismo día 9 de julio de 2025, compareció la señora Palacios mediante *Oposición a Recurso de Revisión*. En apretada síntesis, indicó que MCHI optó por no ser parte de los procesos y que tampoco presentó solicitud de intervención. Por otro lado, añadió que, la parte recurrente tenía conocimiento de los procesos. Finalmente, señaló que, la decisión del DACo está apoyada en el expediente administrativo y que la misma es conforme a derecho.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

## II

### A. Debido proceso de ley

Tanto la Constitución federal, como la de Puerto Rico, exigen que en aquellas instancias donde el Estado pretenda afectar un interés propietario o libertario de los ciudadanos se les garantice un debido proceso de ley. Constitución de los Estados Unidos Enmienda Quinta, USCA Enmd. V; Constitución de Puerto Rico Art. II sec. 7, 1 LPRA Art. II sec. 7. Resulta fundamental identificar que efectivamente la persona goce de un interés propietario o libertario que se vea afectado, para entonces identificar el proceso debido que hay que garantizarle al ciudadano afectado. *Véanse*, *Pueblo v. Esquilín Maldonado*, 152 DPR 257 (2000); *Rivera Santiago v. Srio. de Hacienda*, 119 DPR 265 (1987); *U. Ind. Emp. A.E.P. v. A.E.P.*, 146 DPR 611 (1998). El alcance de lo que representa un debido proceso conforme a las garantías constitucionales varía dependiendo el interés o derecho involucrado y la naturaleza de los procedimientos.

### B. Parte indispensable:

Una parte indispensable es aquella de la que no se puede prescindir, pues, sin su presencia las cuestiones litigiosas no pueden ser adjudicadas correctamente, ya que sus derechos quedarían afectados por una determinación judicial. *RPR & BJJ Ex Parte*, 207 DPR 389, 407 (2021); *López García v. López García,* 200 DPR 50, 63 (2018); *Deliz et als. v. Igartúa et als.*, 158 DPR 403, 432 (2003).

Es una exigencia del debido proceso de ley acumular a todas las partes que tengan un interés común en un pleito. Ello responde a dos principios básicos: (1) la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el dictamen judicial que en su día se emita esté completo para las personas que ya son

partes en el pleito. *López García v. López García,* 200 DPR 50, 64 (2018); *Cepeda Torres v. García Ortiz,* 132 DPR 698, 704 (1993). Así, la Regla 16.1 de las de Procedimiento Civil establece que "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". 32 LPRA Ap. V, R. 16.1.[3]

Es menester señalar que, el "interés común" al que hace referencia la Regla 16.1 de las de Procedimiento Civil, *supra,* no es cualquier interés sino aquel real e inmediato. No se puede tratar de meras especulaciones o de un interés futuro. *RPR & BJJ Ex Parte,* supra, pág. 408; *Allied Management Group, Inc.,* supra, pág. 389; *López García v. López García,* supra*,* pág. 64. Ante ello, el "interés común" debe ser evaluado a la luz de las circunstancias particulares de cada caso y no es un asunto para dilucidar de forma automatizada, pues, requiere realizar una evaluación de varios factores. Entre ellos, el tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad que se presenten. *RPR & BJJ Ex Parte,* supra, pág. 10; *López García v. López García,* supra; *Romero v. S.L.G.,* 164 DPR 721, 732 (2005). El producto de ese análisis es determinar si el tribunal puede hacer justicia y conceder un remedio final y completo a las partes presentes **sin afectar los intereses de la parte ausente**. *RPR & BJJ Ex Parte,* supra, pág. 408; J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2011, T. II, pág. 695.

Nuestro Tribunal Supremo interpreta una parte indispensable como aquella de la cual no se puede prescindir, pues sin su presencia, las cuestiones litigiosas no pueden adjudicarse

---

[3] Nuestro Tribunal Supremo ha resuelto que, como regla general, "nada impide que en casos apropiados se adopten normas de las Reglas de Procedimiento Civil para guiar el curso del proceso administrativo, cuando éstas sean compatibles con dicho proceso y propicien una solución justa, rápida y económica." *Hosp. Dr. Domínguez v. Ryder,* 161 DPR 342, 346 (2004).

correctamente, ya que sus derechos quedarían afectados por una determinación judicial. *Payano v. Cruz,* supra; *RPR & BJJ Ex Parte,* supra, pág. 407; *López García v. López García,* 200 DPR 50, 63 (2018), citando a: *Deliz et als. v. Igartúa et als.,* 158 DPR 403, 432 (2003); *Cepeda Torres v. García Ortiz,* 132 DPR 698, 704 (1993). Hernández Colón, *op. cit.,* Sec. 1202, pág. 165. En particular, ha señalado el Alto Foro que:

> El tercero ausente [en el pleito] debe tener [tal] interés común en [este] que convierte su presencia en un requisito indispensable para impartir justicia completa o de tal orden que impida la confección de un decreto sin afectarlo. La justicia completa es aquella entre las partes y no la que se refiere a una parte y al ausente. El interés común tiene que ser uno real e inmediato. Hernández Colón, *op. cit.,* Sec. 1202, pág. 166.

Sobre el alcance de la Regla 16.1 de Procedimiento Civil, *supra,* la Máxima Curia ha señalado que "este precepto procesal forma parte del esquema de rango constitucional que prohíbe que una persona sea privada de su libertad o propiedad sin el debido proceso de ley". *López García v. López García,* supra, págs. 63-64, citando a: *Mun. de San Juan v. Bosque Real, SE,* 158 DPR 743, 756 (2003). *Infante v. Maeso,* 165 DPR 474, 490 (2005); *Cepeda Torres v. García Ortiz,* supra. Más específico aún, esta regla parte de dos principios fundamentales, a saber: (1) la protección constitucional que impide que una persona sea privada de la libertad y de su propiedad sin un debido proceso de ley, y (2) la necesidad de incluir a una parte indispensable para que el decreto judicial emitido sea completo. *Payano v. Cruz,* supra; *RPR & BJJ Ex Parte,* supra, pág. 407; *Allied Mgmt. Grp., Inc. v. Oriental Bank,* 204 DPR 374 389 (2020); *López García v. López García,* supra, pág. 64.

Ahora bien, es preciso señalar que, no se trata de cualquier interés sobre un pleito, sino de un interés de tal orden que impida la confección de un derecho adecuado sin afectar o destruir radicalmente los derechos a esa parte. *Íd.*; *Romero v. SLG Reyes,* 164

DPR 721, 733 (2005). Véase Cuevas Segarra, *op. cit.*, T. II, pág. 691. Asimismo, el "interés común" al que hace referencia la Regla 16.1 de Procedimiento Civil, *supra*, no es cualquier interés en el pleito, sino que tiene que ser real e inmediato y no puede tratarse de meras especulaciones o de un interés futuro. *Payano v. Cruz*, supra; *RPR & BJJ Ex Parte*, supra, pág. 408; *Allied Mgmt. Grp., Inc. v. Oriental Bank*, supra, págs. 389-390.

Nuestra última instancia judicial ha establecido que la interpretación de esta regla requiere un enfoque pragmático, es decir, que se evalúe a la luz de las circunstancias particulares que se presenten y no de una formula rígida para determinar su aplicación. *López García v. López García,* supra, pág. 65, citando a: *Romero v. SLG Reyes,* supra, pág. 732; *RPR & BJJ Ex Parte*, supra, pág. 408. Específicamente, ha resuelto que:

> [l]a determinación final de si una parte debe o no acumularse depende de los hechos específicos de cada caso individual. Exige una evaluación jurídica de factores, tales como tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad. Cuando, en un pleito, las partes no se han tomado la iniciativa de brindar a terceros ausentes la oportunidad de salvaguardar unos derechos que pueden resultar afectados, estos terceros deben ser acumulados como parte para poder dar finalidad a la adjudicación de la controversia medular. No es suficiente que el ausente haya tenido la oportunidad de intervenir en el pleito, pues mientras no se le haya hecho parte, no se le puede privar de unos derechos mediante sentencia. *López García v. López García,* supra, citando a: Cuevas Segarra, *op. cit.*, T. II, pág. 695. Véase *Payano v. Cruz*, supra.

Dicho de otro modo, la determinación de si debe acumularse a una parte en un pleito depende de los hechos específicos de cada caso. Ello implica que los tribunales deben hacer un análisis juicioso sobre los derechos de las partes que no están presentes y las consecuencias de que se unan al procedimiento. Así pues, lo fundamental es determinar si el tribunal puede hacer justicia y conceder un remedio final y completo a las partes presentes sin afectar los intereses de la parte ausente. *Payano v. Cruz*, supra; *RPR*

*& BJJ Ex Parte,* supra, pág. 409; *López García v. López García,* supra, pág. 65.

La falta de parte indispensable en un pleito es un interés tan fundamental, que constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso. Incluso, los foros apelativos, si así lo entienden, pueden y deben levantar *motu proprio* la falta de parte indispensable en un pleito, debido a que ésta incide sobre la jurisdicción del tribunal. *Íd.*; *RPR & BJJ Ex Parte,* supra, pág. 408.

En conclusión, como se puede apreciar, la razón de ser de la Regla 16.1 de Procedimiento Civil, *supra,* responde al interés de proteger a aquellas personas —naturales o jurídicas— que no están presentes en el pleito de los efectos que acarrea la sentencia dictada y, así, evitar la multiplicidad de pleitos mediante un remedio efectivo y completo. *López García v. López García,* supra, pág. 65; *Granados v. Rodríguez Estrada II,* 124 DPR 593, 605 (1989); *Hernández Agosto v. Romero Barceló,* 112 DPR 407, 412–413 (1982).

Dicha protección encuentra su razón de ser en que, como se ha establecido en más de una ocasión, no traer a una parte indispensable a un pleito, sin duda alguna, se traduce en una violación al debido proceso de ley que le cobija. *López García v. López García,* supra, pág. 66; *Deliz et als. v. Igartúa et als.,* supra, pág. 43.

Cabe destacar que, a pesar de que la omisión de una parte indispensable es motivo para desestimar una causa de acción, no es óbice para que los tribunales, a instancia propia o a solicitud de parte, conceda la oportunidad de traer al pleito a la parte ausente. *Payano v. Cruz,* supra, citando a *Meléndez v. ELA,* 113 DPR 811 (1983); J.A. Cuevas Segarra, *op. cit.,* pág. 694.

### B. La Nueva Ley de Condominios de Puerto Rico

La Nueva Ley de Condominios de Puerto Rico, Ley Núm. 129-2020, 31 LPRA § 1921 *et seq.*, (en adelante, Ley de Condominios), se aprobó a los fines de actualizar las normas que rigen la convivencia en los condominios. Esta ley, derogó la Ley Núm. 104 de 25 de junio de 1958, según enmendada, conocida como Ley de Condominios.

La referida Ley de Condominios, *supra*, se aprobó con el propósito de viabilizar la propiedad individual sobre un apartamento, que forma parte de un edificio o inmueble sometido al Régimen de Propiedad Horizontal, de manera que cada titular tenga el pleno disfrute de su apartamento y de las áreas comunes, siempre que con ello no menoscabe el derecho de los demás titulares al disfrute de sus respectivas propiedades. Art. 2 de la Ley de Condominios, 31 LPRA § 1921a. Este precepto establece que, tanto el Consejo de Titulares como la Junta de Directores, tienen el deber ineludible de orientar y dirigir sus acciones de administración sobre los elementos y áreas comunes hacia el disfrute de la propiedad privada, pues, el ejercicio del dominio en una propiedad sometida a la Ley de Condominios, *supra*, está limitado por los derechos de los demás condóminos y el derecho sobre el apartamento propio, tiene que ejercerse dentro del marco de convivencia y el respeto al derecho ajeno. *Consejo Titulares v. Ramos Vázquez,* 186 DPR 311, 324-325 (2012). Igualmente, en aras de preservar el disfrute de la propiedad privada y, a su vez, lograr la sana convivencia de los condóminos, la Ley de Condominios, *supra*, exige que el ejercicio de los derechos en el condominio se oriente por los principios de la buena fe, la prohibición de ir contra los propios actos y, la prohibición del abuso del derecho. *Íd.*, pág. 325; Art. 2 de la Ley de Condominios, *supra.*

El cuerpo de normas vigentes que rigen el régimen de Propiedad Horizontal, tanto como las disposiciones anteriores y su jurisprudencia interpretativa, han sido consistentes con el propósito

que se pretende realizar con este tipo de vivienda. *Consejo de Titulares v. PRCI Loan CR, LLC*, 210 DPR 403, 414-415 (2022). El régimen de Propiedad Horizontal cumple con una finalidad doble, a saber: (1) proveer a las personas la posibilidad de disfrutar el derecho a la propiedad plena e individual de un inmueble y, (2) maximizar el uso escaso del terreno disponible en el país. *Consejo de Titulares v. PRCI Loan CR, LLC*, supra, pág. 415; *Park Tower, SE v. Registradora*, 194 DPR 244, 253 (2015). De esta forma, la propiedad plena e individual coexiste con otros dueños mientras comparten áreas comunes para el disfrute de todas y todos sus integrantes. *Íd.*

El Artículo 49 de la Ley de Condominios, 31 LPRA § 1922u, describe las obligaciones correspondientes al Consejo de Titulares. En lo pertinente al caso de autos sobre el fondo de reserva, dicho artículo, en su inciso (d), dispone lo siguiente:

[...]

Corresponde al Consejo de Titulares:

(a)...

(b)...

(c)...

(d) Aprobar la ejecución de obras extraordinarias y mejoras y recabar fondos para su realización. El presupuesto anual incluirá una partida de fondo de reserva que no será menor del cinco por ciento (5%) del presupuesto total de gastos del condominio para ese año. La aportación se depositará mensualmente en la **cuenta independiente de reserva** a base de lo que hubiera sido el recaudo de las cuotas de mantenimiento del mes transcurrido.

Dicho fondo se irá nutriendo hasta alcanzar una suma igual al dos por ciento (2%) del valor de reconstrucción, cuando **el Consejo de Titulares decidirá si se continúa o no aportando al mismo. Los dineros se conservarán en una cuenta especial, separada de la de operaciones, y sólo podrá disponerse de todo o parte del mismo para la realización de obras extraordinarias o urgentes y para las obras de mejora, según se dispone a continuación.** Una vez el balance del fondo sea menor al mínimo antes dispuesto, deberán restituirse las aportaciones mensuales hasta

alcanzar nuevamente el dos por ciento (2%) del valor de reconstrucción del inmueble.

1. *Obras extraordinarias* – El Director, el Presidente y/o el Tesorero podrán realizar retiros del fondo de reserva para costear este tipo de obra, previa autorización mayoritaria del Consejo de Titulares debidamente convocado en asamblea extraordinaria.

2. *Obras urgentes* – El Director, Presidente y/o el Tesorero podrán realizar retiros del fondo de reserva para toda obra urgente no prevista en el presupuesto anual, previa autorización mayoritaria del Consejo de Titulares debidamente convocado en asamblea extraordinaria para atender este asunto específico. La asamblea para autorizar el desembolso se convocará y celebrará en un término expedito no menor de veinticuatro (24) horas. La notificación podrá ser mediante entrega personal, debajo de cada puerta o por cualquier medio alterno disponible, incluyendo correo electrónico.

3. *Obras de mejoras* – Las obras de mejora sólo podrán realizarse, mediante la aprobación de dos terceras partes (2/3) de los titulares que a su vez reúnan las dos terceras partes (2/3) de las participaciones en las áreas comunes. Se requerirá el consentimiento unánime del Consejo de Titulares cuando dichas obras de mejoras requieran derrama. Los titulares que posean elementos comunes limitados podrán realizar, a su costo, y luego de obtener el consentimiento de todos los titulares beneficiados, aquellas mejoras o inversiones que estimen convenientes para tales elementos comunes limitados, siempre y cuando, las mismas no afecten la seguridad y solidez del edificio, ni menoscaben el disfrute de ninguna de las restantes unidades por parte de sus titulares. Si las mejoras o inversiones alteran la fachada del edificio, o el uso de un área común, deberá obtener la previa aprobación de dos terceras partes (2/3) de los titulares, que a su vez, reúnan las dos terceras partes (2/3) de las participaciones en las áreas comunes.

4. *Obras para atender Estado de Emergencia* – El Director, el Presidente y/o el Tesorero podrán realizar retiros del fondo de reserva para todo gasto operacional para atender un "Estado de Emergencia", previa autorización mayoritaria del Consejo de Titulares debidamente convocado en asamblea extraordinaria para atender este asunto específico. La asamblea para autorizar el desembolso se convocará y celebrará en un término expedito no menor de veinticuatro (24) horas. La notificación de convocatoria para asamblea extraordinaria para

aprobar el desembolso podrá ser mediante entrega personal, debajo de cada puerta o por cualquier medio alterno disponible, incluyendo correo electrónico. Se entenderá que existe un "Estado de Emergencia" cuando así lo decreten las autoridades estatales o federales.

[...]

Por su parte, el Artículo 51, de la Ley de Condominios, 31 LPRA § 1922w, dispone lo siguiente sobre las personas jurídicas con múltiples viviendas y las votaciones:

[...]

Cuando uno (1) o más apartamentos pertenecieren a una persona jurídica, ésta designará, mediante resolución corporativa, a la persona que la representará para que asista a las asambleas y ejercite el derecho al voto que le corresponda. En ausencia de la resolución corporativa no podrá registrarse el voto de ese apartamento en las decisiones del Consejo de Titulares. La resolución corporativa que acredite la representatividad, tiene que ser entregada, por lo menos, veinticuatro (24) horas antes de la fecha de la asamblea.

[...]

Cabe destacar que, la Ley de Condominios, *supra*, entró en vigor de manera inmediata y estableció que, sus disposiciones rigen a todo inmueble sometido al régimen de Propiedad Horizontal, irrespectivamente de la fecha en que fuera sometido al mismo. Art. 76 de la Ley 129-2020, 31 LPRA § 1921.

**III**

En su primer señalamiento de error, la parte recurrente sostiene que, erró la agencia recurrida al adjudicar la *Querella* a favor de la señora Palacios y decretar la invalidez del acuerdo del Consejo e imponer consecuencias económicas para MCHI sin incluirla como parte indispensable en este proceso adjudicativo. Arguyó que, se le violentó su debido proceso de ley al emitirse una determinación para la cual la agencia carecía de jurisdicción por falta de parte indispensable. Adelantamos que le asiste la razón.

Como mencionamos previamente, la señora Palacios interpuso una *Querella* ante la agencia recurrida en la que impugnó el acuerdo del Consejo de Titulares que autorizó el desembolso de $12,600 de su cuenta de reserva. Es meritorio puntualizar que, a pesar de que el dictamen recurrido tiene un efecto directo sobre los intereses de la parte recurrente MCHI, esta no fue incluida como parte en el caso interpuesto ante el DACo.

Como mencionamos previamente, una parte indispensable es aquella que tenga un interés común sin cuya presencia no pueda adjudicarse la controversia. Conforme mandata nuestro ordenamiento procesal, estas se harán partes y se acumularán como demandantes o demandadas, según corresponda. Este requerimiento es de entronque constitucional, pues constituye una exigencia del debido proceso de ley, que responde a dos principios básicos: 1) la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el dictamen judicial que en su día se emita esté completo para las personas que ya son partes en el pleito. *López García v. López García*, supra, pág. 64; *Cepeda Torres v. García Ortiz,* supra, pág. 704.

Como reseñamos, la falta de parte indispensable en un pleito es un interés tan fundamental, que constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso. Incluso, los foros apelativos, si así lo entienden, pueden y deben levantar *motu proprio* la falta de parte indispensable en un pleito, debido a que ésta incide sobre la jurisdicción del tribunal. *RPR & BJJ Ex Parte,* supra, pág. 408.

En el caso que nos ocupa, coincidimos con el planteamiento de la parte recurrente, a los efectos de que el foro recurrido emitió su dictamen sin ostentar jurisdicción para ello, por falta de parte indispensable.  No podemos pasar por alto que, el Consejo de

Titulares alertó oportunamente al foro recurrido sobre dicho defecto procesal, al señalar que MCHI es parte indispensable en el pleito. Ciertamente, la declaración de nulidad del acuerdo alcanzado en la Asamblea celebrada el 23 de abril de 2022, repercute directamente en el interés de MCHI y según alegado, afecta potencialmente los acuerdos alcanzados entre el Consejo de Titulares transaccionales respecto a sendos casos judiciales y administrativos entre las partes.

En el caso de marras, resulta forzoso concluir que, ante la falta de parte indispensable, el foro recurrido carecía de jurisdicción para emitir el dictamen recurrido. Consecuentemente, el mismo no surte efecto jurídico alguno.

Por último, en vista de lo aquí resuelto, resulta innecesario adentrarnos en la discusión del segundo señalamiento de error.

**IV**

Por los fundamentos antes esbozados, se revoca y se declara nulo el dictamen recurrido. Se devuelve el caso al DACO para la continuación de los procedimientos, de conformidad con lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

El Juez Rivera Torres disiente sin opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones